# United States Court of Appeals
## For the First Circuit

No. 13-2437

CRYSTAL LITZ, and all others similarly situated,

Plaintiffs, Appellants,

v.

THE SAINT CONSULTING GROUP, INC.; P. MICHAEL SAINT;
PATRICK F. FOX,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Torruella, Howard, and Kayatta,
Circuit Judges.

Shannon Liss-Riordan, with whom John E. Duke, Lichten & Liss-Riordan, P.C., James B. Zouras, Ryan F. Stephan, and Stephan Zouras, LLP were on brief, for appellants.
Sean P. O'Connor, with whom Robert P. Joy, Daniel S. Field, and Morgan, Brown & Joy, LLP were on brief, for appellees.

November 4, 2014

**KAYATTA, Circuit Judge**.  Appellants Crystal Litz and Amanda Payne ("plaintiffs") claim unpaid overtime wages for their work as project managers for The Saint Consulting Group, Inc. ("Saint Consulting").  The district court concluded that plaintiffs were "highly compensated employees" and thus exempt from the overtime pay protections of the Fair Labor Standards Act ("FLSA").  29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.601.  For the following reasons, we affirm.

## I. Background

The relevant facts are not in dispute.  Saint Consulting is a Massachusetts corporation that provides political consulting to land use campaigns across the country.  P. Michael Saint is its founder, CEO, chairman, and majority shareholder, and Patrick Fox serves as its president.  Litz joined Saint Consulting as a project manager in 2005.  Her relevant period of employment for this appeal is from October 2009, when she returned to the project manager position after a three-year stint as division manager, until her employment with Saint Consulting ended in March 2010.  Amanda Payne worked as a project manager for Saint Consulting from June 2003 until October 2008.

The plaintiffs earned well over $100,000 per year as project managers during the years at issue.  For most weeks, their earnings equaled the number of hours they billed to clients multiplied by an hourly rate between $40 and $60.  Project managers

typically received $2,500 to $4,000 per week in gross pay, which means that they typically worked more than 40 hours per week. Saint Consulting did not pay its project managers at a higher, overtime rate for hours worked beyond 40 hours per week. Saint Consulting's compensation plan for the relevant time provided, however, that "[a]ll project managers will . . . be guaranteed a minimum weekly salary of $1,000 whether they bill any hours or not." Therefore, if a project manager billed 10 hours at a $50 hourly rate, or $500, she would still receive $1,000 in pay for that week. If she instead billed 60 hours, she would simply receive $3,000, or 60 times $50. There is no dispute that Saint Consulting always paid the $1,000 stipend[1] when the value of a project manager's billed hours did not exceed $1,000. Indeed, Payne billed no hours during several weeks and still received $1,000 per week, designated as "MINSAL" or "STIPEN" on her paystubs.

---

[1] The plaintiffs use the term "stipend," arguing that this is consistent with Saint Consulting's usage. In this litigation, Saint Consulting prefers the term "guaranteed minimum weekly salary." This is a debate of no consequence, as the terms "stipend" and "salary" are commonly viewed as synonyms for one another, see, e.g., Roget's II: The New Thesaurus 861, 960 (3d ed. 1995), and some sources even define "stipend" as a "salary." See, e.g., Black's Law Dictionary 1550 (9th ed. 2009) (defining "stipend" as "[a] salary or other regular, periodic payment"). There is, moreover, no evidence that Saint Consulting sought to communicate any particular technical meaning by usage of either term. In any event, since the plaintiffs lost on summary judgment, we will use their preferred term.

In September 2010, former project manager Leigh Mayo filed suit against Saint Consulting in the Northern District of Illinois for unpaid overtime compensation under the FLSA. See 29 U.S.C. § 207. Litz and Payne consented to join the action as party plaintiffs in December 2010 and January 2011, respectively. Litz became the representative plaintiff[2] in March 2011 after Mayo settled with Saint Consulting. Because none of the 36 other project managers opted to join the lawsuit after receiving notice of opt-in rights under 29 U.S.C. § 216(b), Litz and Payne were the sole party plaintiffs.

With Mayo, an Illinois resident, out of the case, Saint Consulting filed and the court granted an uncontested motion to transfer venue to the District of Massachusetts. After the transfer, the plaintiffs sought leave to file a second amended complaint with a claim under the Massachusetts overtime statute. See Mass. Gen. Laws ch. 151, § 1A. The district court denied their motion, reasoning that the Massachusetts statute did not apply because they did not allege that they or any other project manager worked, resided, or had sufficient contact with Massachusetts. Litz v. Saint Consulting Grp., Inc., No. 11-10693-GAO, 2012 WL 549057 (D. Mass. Feb. 17, 2012). Two years later, after both sides filed motions for summary judgment, the plaintiffs asked the

_____

    [2] 29 U.S.C. § 216(b) allows collective actions commenced by one or more plaintiffs as a representative, with other employees allowed to opt in to the action by consent.

-4-

district court to reconsider its denial of leave to add a claim under Massachusetts overtime law. As support for their motion, the plaintiffs pointed to a new decision by the Massachusetts Supreme Judicial Court applying the Massachusetts independent contractor statute to New York residents and workers, although, unlike here, a written contract between the parties in that case contained an express choice of Massachusetts law provision. Taylor v. Eastern Connection Operating, Inc., 465 Mass. 191, 192 (2013). The district court denied the plaintiffs' request.

The district court granted summary judgment on the FLSA claim to Saint Consulting. The plaintiffs appeal from that judgment, as well as from the denial of their motions to amend and reconsider.[3]

## II. Standard of Review

We review de novo the district court's grant of summary judgment. Velázquez-Pérez v. Developers Diversified Realty Corp., 753 F.3d 265, 270 (1st Cir. 2014). As the moving party, Saint Consulting is entitled to summary judgment if it "shows that there

---

[3] The plaintiffs' notice of appeal lacks any reference to the district court's orders denying leave to amend their complaint and for reconsideration. Though neither party raises the point, the notice of appeal arguably fails to "designate the judgment, order, or part thereof being appealed" with respect to these two orders. Fed. R. App. P. 3(c)(1)(B). Nonetheless, "this rule is not absolute . . . and we assume arguendo that we have jurisdiction to resolve this claim of error." Nikitine v. Wilmington Trust Co., 715 F.3d 388, 389 n.2 (1st Cir. 2013) (citations omitted).

-5-

is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

### III. Analysis

**A. The Plaintiffs' FLSA Claim**

The FLSA requires employers to pay nonexempt employees at a higher rate for hours worked beyond 40 hours in a week.  29 U.S.C. § 207(a)(1).  The FLSA exempts from its overtime protection "any employee employed in a bona fide executive, administrative, or professional capacity."  Id. § 213(a)(1).  The FLSA implementing regulations further provide that this exemption applies to "highly compensated employees" who (1) "customarily and regularly perform[] any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee"; (2) receive at least $100,000 in total annual compensation; and (3) receive "at least $455 per week paid on a salary or fee basis."  29 C.F.R. § 541.601(a), (b)(1). Saint Consulting argues, and the district court agreed, that the plaintiffs satisfied these three requirements.  The plaintiffs concede that they satisfied the duties requirement and earned well over $100,000 annually during the relevant time period, but they argue that they were not paid any amount "on a salary . . . basis."

This appeal therefore depends on whether Saint Consulting paid the $1,000 stipend on a salary basis within the meaning of 29 C.F.R. § 541.602(a).  The stipend was paid on a "salary basis" if

it was (1) "a predetermined amount," (2) "constituting all or part of the employee's compensation," and (3) "not subject to reduction because of variation's in the quality or quantity of the work performed."  Id. § 541.602(a).  There is no dispute that the stipend was a predetermined amount of $1,000 per week.  The plaintiffs' arguments instead apply to the latter two requirements.

The plaintiffs first direct us to two communications from Saint and Fox that, according to plaintiffs, show that the $1,000 stipend was "subject to reduction because of variations in the . . . quantity of work performed."  Id.  The first is a lengthy email from Saint instructing managers to document instances in which a project manager refused assignments or available billable hours outside of their geographic division.  After reading the email in its entirety, however, it is clear that Saint was trying to make sure his company satisfied project managers who wanted to make more than $100,000 per year, and not suggesting that the company would reduce stipends.[4]  Notably, in that same email Saint

_____

[4] It appears that the amount of hours assigned to project managers varied greatly, in part because some division managers did not trust certain project managers.  The pertinent parts of the email read

Each of our project managers was told when they were hired they could make $100,000 a year or more from billed hours. . . . We need to do everything we can to insure each and every project manager is getting as many hours as they want, at least up to 45 or 50 a week.  How is it fair that some project managers get 75 or 80 hours to bill week in and week out while other[s] get[] 25 or 30?

-7-

explained that project managers had a minimum fixed cost to Saint Consulting of "$72,000 a year ($1,000 a week minimum and benefits)," which suggests that Saint did not consider it a possibility to reduce the $52,000 per year in weekly stipend payments.

The second communication, by contrast, does speak to the possibility of not paying the stipend. It is a brief message from Fox instructing managers that the "stipend is not to be used like vacation time. If there are hours available for a project manager to bill and they choose not to do the work, they need to use vacation time. We will not pay the stipend in that situation." But the plaintiffs identify no instance where Saint Consulting actually reduced or did not pay the stipend. Without any evidence that Saint Consulting had an actual practice of reducing the $1,000 stipend for any project manager, and with an undisputed record showing no project manager was paid less than the stipend amount,

---

. . .

    I understand that some [project managers] who have been offered . . . out-of-division hours in the past have declined . . . .  We need to document these offers and responses.

. . .

    I do not want to have any more debates with a disgruntled employee whether they were offered hours and refused or whether the division manager simply chose not to assign them enough hours. Nor do I want to open us up for charges of discrimination.

this single email cannot demonstrate that plaintiffs' pay was actually subject to improper deductions. See 29 C.F.R. § 541.603(a) & (b) (requiring "[a]n actual practice of making improper deductions" for an employer to lose the exemption); see also 69 Fed. Reg. 22,122-01, 22,181 (Apr. 23, 2004) ("[A] corporate-wide policy permitting improper deductions is some evidence that an employer has an actual practice of not paying employees on a salary basis, but not sufficient evidence by itself to cause the exemption to be lost if a manager has never used that policy to make any actual deductions . . . ."). Even if Saint Consulting did require project managers to use vacation time when they rejected available hours, this would only show that the project managers' vacation time, and not their salary, was subject to deduction. See McBride v. Peak Wellness Ctr., Inc., 688 F.3d 698, 705-06 (10th Cir. 2012) (employer permissibly deducted employee's accrued leave for partial day absences).

The plaintiffs also point to the paystubs generated by Saint Consulting's payroll company. These paystubs show hours times hourly rate, with no express reference to hourly pay. In other words, if an employee earning $50 per hour works 21 hours, the paystub reflects $50 times 21 as equaling gross pay of $1050. The plaintiffs argue that for the exemption to apply, the paystub formula need have been something like $1,000 + (# of hours -

20)($50).  In short, the plaintiffs contend that the "stipend" does not exist except when hours times hourly rate falls below $1,000.

This argument elevates form over substance, and simply ignores the economic reality of the guarantee.  Under the paystub formula, as backed by the undisputed guarantee, every single project manager in every single possible situation would receive exactly the same pay as under the more complicated formula that the plaintiffs say Saint Consulting should have used.  The fact that the pay was usually--but not always--high enough to render the guaranteed stipend unnecessary hardly means that the guarantee was not "part of the employee's compensation."  29 C.F.R. § 541.602(a).  And since it was both "predetermined" and "not subject to reduction because of variation's in the quality or quantity of the work performed," it plainly qualifies as a payment on a "salary basis."  Id.; see Anani v. CVS RX Servs., Inc., 730 F.3d 146, 148 (2d Cir. 2013) (pharmacist qualified for highly compensated employee exemption when he received a guaranteed $1,250 weekly salary and significant additional compensation based on number of hours worked); Hogan v. Allstate Ins. Co., 361 F.3d 621, 624 (11th Cir. 2004) (insurance agents were paid on salary basis when they received a "monthly minimum compensation amount if their compensation from net written premiums was less than the guarantee").

Lastly, we need not reach the alternative argument to which the plaintiffs devoted a significant portion of their opening brief, contending that the separate "[m]inimum guarantee plus extras" regulation of 29 C.F.R. § 541.604 required Saint Consulting's stipend to be reasonably related to plaintiffs' actual pay of more than $3,000 per week. Saint Consulting does not rely on that exemption, and we see no reason why its requirements should be grafted onto the materially different exemption on which Saint Consulting relies. See Anani, 730 F.3d at 149 ("We perceive no cogent reason why the requirements of C.F.R. § 541.604 must be met by an employee meeting the requirements of C.F.R. § 541.601."). The plaintiffs thus sensibly abandoned in their reply brief the argument that section 541.604(b) applies to highly compensated employees ("[p]laintiffs do not take a position on this issue").

In sum, because the undisputed evidence shows that Saint Consulting paid its project managers on a salary basis within the meaning of 29 C.F.R. § 541.602(a), and the parties agreed that they received more than $100,000 per year for continuously performing the duties of a professional employee, the project managers were exempt as highly compensated employees under 29 C.F.R. § 541.601.

**B. Denial of Leave to Amend Complaint**

The Massachusetts statute under which the plaintiffs sought to bring a claim in their second amended complaint exempts from its overtime protections "a bona fide executive, or administrative or professional person . . . earning more than eighty dollars per week." Mass. Gen. Laws ch. 151 § 1A(3). In construing this exemption, Massachusetts looks to track federal law. Goodrow v. Lane Bryant, Inc., 432 Mass. 165, 171 (2000) (looking to FLSA regulations to interpret Massachusetts executive employee exemption); see also Swift v. AutoZone, Inc., 441 Mass. 443, 447 (2004) ("[T]he overtime provisions under State law were intended to be essentially identical to Federal law." (quotation omitted)). Because our resolution of the plaintiffs' FLSA claim would therefore dictate the failure of their Massachusetts claim, see Cash v. Cycle Craft Co., 508 F.3d 680, 687 (1st Cir. 2007), whether the district court should have allowed them to add such a claim is a moot question.

## IV. Conclusion

For the foregoing reasons, we conclude that the plaintiffs were highly compensated employees exempt from the overtime protections of the FLSA. We therefore affirm the district court's grant of summary judgment in favor of Saint Consulting.