RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0287p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

TOM HUGHES and DESMOND MCDONALD, on behalf of
themselves and others similarly situated,

　　　　　　　　　*Plaintiffs-Appellants*,

　　*v.*

GULF INTERSTATE FIELD SERVICES, INC.,

　　　　　　　　　*Defendant-Appellee*.

No. 17-3112

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:14-cv-00432—Edmund A. Sargus Jr., Chief District Judge.

Argued: October 6, 2017

Decided and Filed: December 19, 2017

Before: MERRITT, MOORE, and ROGERS, Circuit Judges.

---

## COUNSEL

**ARGUED:** Richard J. Burch, BRUCKNER BURCH PLLC, Houston, Texas, for Appellants. James J. Swartz, Jr., POLSINELLI PC, Atlanta, Georgia, for Appellee. **ON BRIEF:** James A. Jones, BRUCKNER BURCH PLLC, Houston, Texas, Robert E. DeRose, Robi J. Baishnab, BARKAN MEIZLISH HANDELMAN GOODIN DEROSE WENTZ, LLP, for Appellants. James J. Swartz, Jr., J. Stanton Hill, POLSINELLI PC, Atlanta, Georgia, Mark A. Knueve, VORYS, SATER, SEYMOUR AND PEASE LLP, Columbus, Ohio, for Appellee.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.   Tom Hughes and Desmond McDonald served as welding inspectors for Gulf Interstate Field Services on a pipeline-construction project in Ohio between 2013 and 2014.  In 2014, they and others similarly situated brought suit under the Fair Labor Standards Act (FLSA) and the comparable Ohio Minimum Fair Wage Standards Act (OMFWSA), asserting that they were entitled to overtime pay for weeks in which they worked more than forty hours.  Gulf Interstate argued, and the district court ruled on summary judgment, that Hughes, McDonald, and other employees like them were instead exempt from the overtime requirements because they qualified as highly compensated employees under the governing regulations.

Though Hughes and McDonald concede that they were paid in a manner and at a rate consistent with being exempt, they argue that those facts do not resolve the question under the text of the regulations.  Instead, they argue, it matters whether their salaries were *guaranteed*, and in turn, whether a rational trier of fact could have concluded that there was no such guarantee.  Because such a guarantee does matter, and because there is a genuine issue of material fact as to whether such a guarantee existed, we **REVERSE** the district court's grant of summary judgment to Gulf Interstate and remand for further proceedings.

## I. BACKGROUND

Hughes and McDonald began working for Gulf Interstate as welding inspectors in January and June 2013, respectively, on a pipeline project in Ohio for a Gulf Interstate client called MarkWest.  R. 31-1 (Hughes Decl.) (Page ID #151–52); R. 31-2 (McDonald Decl.) (Page ID #155); *see also* R. 42-13 (Kramer Decl., Exs. BA–BB) (Page ID #600, 602).  Prior to beginning their work, they each received an offer letter from Gulf Interstate stating that they were entitled to, in addition to a weekly per diem and computer stipend, a salary of

"$337.00/Day Worked." R. 31-1 (Hughes Decl., Ex. 1) (Page ID #154).[1] Rate sheets exchanged between Gulf Interstate and MarkWest regarding the project also listed, among various "Cost Components," a "Daily Rate," with a note appended clarifying that the "[d]ay rate" would be "paid on days worked." R. 93-2 (Sprick Dep., Ex. 3) (Page ID #3182).

Correspondence between MarkWest and Gulf Interstate offers further discussion of the arrangement. After Gulf Interstate's director asked whether inspectors were "paid for DAYS WORKED only (whether its [sic] 1, 2, 3, etc), or is there a 5, 6, or 7 day minimum ?", a MarkWest manager replied: "[Inspectors are p]aid for days worked only. This was explained to all of the inspectors coming in. These projects are based on a 6 day work week @ 10 hours a day (salaried position). As is the case anywhere any additional hours worked in a day is [sic] not paid." R. 93-2 (Sprick Dep., Ex. 12) (Page ID #3241).

There is also evidence that welding inspectors were told orally that they would be working "six days a week" and ten hours a day, an arrangement known by industry shorthand as "six 10s." R. 90-9 (Hughes Dep.) (Page ID #1637); *see* R. 42-2 (Hill Decl.) (Page ID #310) ("It was my expectation . . . that . . . either one of my subordinates or I explained to each Plaintiff that they would be paid a daily rate multiplied by six in each week . . . ."); *see also* 90-10 (McDonald Dep.) (Page ID #1750, 1752); R. 90-20 (Williamson Dep.) (Page ID #2684). And Gulf Interstate's Field Services Manager, Catherine Kramer, testified that inspectors were to be paid for six days even if they worked five days, although she stated that this aspect of the arrangement was "not explained" in the offer letters. R. 93-3 (Kramer Dep.) (Page ID #3253).[2]

Over the course of their employment, Hughes and McDonald earned an annualized rate of more than $100,000 per year. *See* R. 42-6 (Kramer Dep.) (Page ID #364) (attesting that Hughes earned nearly $109,000 "for work performed in 2013" and that McDonald earned nearly

---

[1]Although McDonald's offer letter is not in the record, the record does indicate, per an email written by Gulf Interstate's Field Services Manager, Catherine Kramer, that "[e]veryone that [was] out there working would have received the same letter." R. 93-2 (Sprick Dep., Ex. 13) (Page ID #3243–44); R. 93-3 (Kramer Dep., Ex. 6) (Page ID #3269).

[2]Gulf Interstate has evidently since changed its rate sheets to note that "[i]nspectors are exempt employees and will be paid for all days worked and guaranteed a minimum of five (5) days per week paid on a salary basis." *See* R. 93-2 (Sprick Dep., Ex. 6) (Page ID #3216).

$83,000 "for work performed from April 15, 2013 through December 31, 2013"). Along with others similarly situated, they received pay for at least six days of ten-hour shifts per week, they earned pay for holidays (some worked, some unworked), and McDonald (again, along with others similarly situated[3]) received pay on days that he was out sick. *See* R. 42-6–42-13 (Kramer Decl. & Exs. A–BJ) (Page ID #356–643).[4] During the months that they worked, in other words, there does not appear to have been a week during which Hughes and McDonald did not receive pay consistent with a guarantee of a weekly salary equivalent to six days of work at ten hours per day.[5] *See id.*; *see also* R. 90-2 (Mot. for Decertification, App'x A) (Page ID #1063–1116).

In May 2014, Hughes and McDonald brought suit on behalf of themselves and others similarly situated under the FLSA, *see* 29 U.S.C. § 207, and the OMFWSA, *see* Ohio Rev. Code § 4111.03. R. 1 (Compl. ¶ 1) (Page ID #1). In January 2015, they moved to certify an FLSA collective action and an OMFWSA class action under 29 U.S.C. § 216(b) and Federal Rule of Civil Procedure 23, respectively. R. 30 (Pl. Mot. for Conditional and Class Certification) (Page ID #112). In July 2015, the district court granted Hughes and McDonald's motion for FLSA conditional certification but denied their motion for OMFWSA class certification. R. 59 (Dist. Ct. Certification Op. & Order at 1) (Page ID #764).

In November 2015, Gulf Interstate moved for summary judgment, arguing that "undisputed evidence establishes each element of the highly compensated employee exemption to overtime pay under the Fair Labor Standards Act and analogous Ohio state law." R. 91-1 (Gulf Interstate's Brief in Support of Mot. for Summ. J. at 1) (Page ID #3056). The district court granted Gulf Interstate's motion, concluding that Hughes and McDonald were exempt on the grounds that "actual payment practice"—regardless of the existence of guarantee—controlled the question and "there [was] no dispute that Plaintiffs were actually paid the requisite amount."

---

[3]Hughes does not seem to have missed any days due to illness.

[4]Kramer also testified that employees were paid for sick days, but that such pay was the result of "an agreement with MarkWest" and disbursed at MarkWest's discretion, as was pay for unworked holidays. R. 93-3 (Kramer Dep.) (Page ID #3253)

[5]The only apparent exceptions are permissible ones, such as for McDonald's last week of work or a week in which Hughes performed no work. *See, e.g.*, R. 42-11 (Kramer Decl. Ex. AO) (Page ID #551); R. 42-10 (Kramer Decl., Ex. AD) (Page ID #508); *see also, e.g.*, R. 90-2 (Mot. for Decertification, App'x A) (Page ID #1075, 1086).

R. 110 (Dist. Ct. Summ. J. Op. & Order at 6) (Page ID #3740). After a successful motion for clarification, R. 117 (Clarification Order) (Page ID #3772), a successful motion to sever and stay, R. 129 (Severance Order) (Page ID #3848), and an entry of final judgment under Rule 54(b) as to Hughes and McDonald, *see* R. 131 (Final J. Order) (Page ID #3855), this appeal followed.

## II. DISCUSSION

This case turns on two issues: (1) whether it matters, for purposes of the salary-basis requirement, whether at least arguably day-rate workers like Hughes and McDonald were *guaranteed* the requisite minimum weekly salary, and (2) if so, whether there was in fact such a guarantee. We conclude that it does matter, and that there is a genuine issue as to whether such a guarantee existed.

### A. Standard of Review

"We review de novo a district court's order granting summary judgment, applying the standard set forth in Rule 56(a)." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015). Under that rule, we must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is no such genuine dispute when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In conducting this review, "we must view all evidence in the light most favorable to the nonmoving party." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007).

### B. Whether a Guarantee Matters

The FLSA prohibits, for qualifying employees, employment "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Some employees, however, are exempt from this requirement. *See id.* This protection does not apply, for example, to employees "employed in a

bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1); *see also* Ohio Rev. Code Ann. § 4111.03(A), (D)(3)(d) (same).

The overarching question in this case is whether Hughes and McDonald fell under this set of exemptions during their employment with Gulf Interstate. An exemption is an affirmative defense, and an employer seeking to assert one "must establish through 'clear and affirmative evidence' that the employee meets every requirement of [the] exemption." *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007) (quoting *Ale v. Tenn. Valley Auth.*, 269 F.3d 680, 691 n.4 (6th Cir. 2001)). The Supreme Court has made clear that such "exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).

The Secretary of Labor has promulgated rules to govern whether an employee qualifies for the set of exemptions at issue. *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 846 (6th Cir. 2012). Under 29 C.F.R. § 541.601, an employee qualifies as an exempt "[h]ighly compensated employee[]" if three tests are met: "(1) a duties test; (2) a salary-level test; and (3) a salary-basis test." *Orton*, 668 F.3d at 846. The duties and salary-level tests are not in question here; the "sole issue" is "whether Hughes and McDonald met the 'salary basis' test." *See* Appellants' Br. at 13; *see also id.* at 20.

Under the governing regulations, an employee meets the salary-basis test "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). To Gulf Interstate and the district court, one key phrase within this test—"if the employee regularly receives"—resolves this case. *See* Appellee's Br. at 20; R. 110 (Dist. Ct. Summ. J. Op. & Order at 6) (Page ID #3740). They come to that conclusion because, as we have noted before, that regulatory phrase was once longer; it used to read: "if *under his employment agreement* he regularly receives," *Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 627 (6th Cir. 2009) (emphasis added) (quoting 29 C.F.R. § 541.118(a) (1973)). Thus, when a restaurant-franchise vice president named John Orton, who had an "annual base salary . . . set at

$125,000," sued his employer "for damages stemming from [a] period he claim[ed] he worked but was not paid," *Orton*, 668 F.3d at 845, we rejected the restaurant franchise's argument (and reversed the district court's ruling) that Orton was exempt "based on the salary that [he was] owed under [his] employment agreement" rather than what he actually received, *id.* at 848 (quoting *Orton v. Johnny's Lunch Franchise, LLC*, No. 10–11013, 2010 WL 2854303, at *5 (E.D. Mich. July 20, 2010)). Instead, in light of § 541.602(a)'s new language, "the relevant starting point for whether [Orton was] paid on a salary basis" was "not what Orton was owed under his employment agreement," but "rather . . . what compensation Orton actually received." *Orton*, 668 F.3d at 848.

To conclude that our holding in *Orton* controls Hughes and McDonald's case, however, is to put the cart before the horse. The reason that the "regularly receives" language was decisive there was because Orton so clearly met the other textual requirements of § 541.602(a): he had an "annual base salary . . . set at $125,000." *Orton*, 668 F.3d at 845. In other words, he was clearly paid "on a weekly, or less frequent basis," and his "compensation . . . [was] not subject to reduction because of variations in the quality or quantity of the work performed." *See* 29 C.F.R. § 541.602(a). It was guaranteed.

Those textual prerequisites are not, by contrast, met here. Hughes and McDonald have introduced evidence that they were paid a "[d]ay rate," R. 93-2 (Sprick Dep., Ex. 3) (Page ID #3182), and that their salary was calculated at rate of "$337.00/Day Worked," R. 31-1 (Hughes Decl., Ex. 1) (Page ID #154). There is thus reason to conclude that their pay was calculated *more* frequently than weekly. And it is very much disputed whether what they received weekly was in fact guaranteed.

The text of § 541.602(a) does not tell us what to do when an employee's salary is *not* clearly calculated "on a weekly, or less frequent basis." Hughes and McDonald, however, point us to a neighboring provision that might be helpful. *See, e.g.*, Appellants' Br. at 17. As they observe, § 541.604(b) states:

> An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least

> the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned.

29 C.F.R. § 541.604(b). This language, Hughes and McDonald point out, *retains* the key phrase "employment arrangement," redolent of the bygone textual reference to an "employment agreement," the newfound absence of which we found telling in *Orton* and *Baden-Winterwood*. Appellants' Br. at 27; *see Orton*, 668 F.3d at 848; *Baden-Winterwood*, 566 F.3d at 627. And § 541.604(b), meanwhile, specifically requires "a *guarantee* of at least the minimum weekly required amount paid on a salary basis." 29 C.F.R. § 541.604(b) (emphasis added). Thus, Hughes and McDonald argue, under § 541.604(b), we must look for a guarantee—and to assess whether there was a guarantee, we must, by negative implication from our own precedents, look beyond payment received to the formal terms of the employment arrangement.

Gulf Interstate argues that we should pay no attention to § 541.604(b) in this case, directing us to precedent from our sister circuits that, it claims, says as much. Appellee's Br. at 21 (citing *Anani v. CVS RX Servs., Inc.*, 730 F.3d 146, 149 (2d Cir. 2013); *Litz v. Saint Consulting Grp., Inc.*, 772 F.3d 1, 5 (1st Cir. 2014)). And it is true that the First and Second Circuit decisions that Gulf Interstate cites do reject reference to § 541.604(b) in certain situations. *See Litz*, 772 F.3d at 5; *Anani*, 730 F.3d at 149. But what Gulf Interstate misunderstands about these authorities—as it does about *Orton*—is that the situations in which those authorities ignore § 541.604(b) are situations in which the textual requirements of 29 C.F.R. §§ 541.601, 541.602(a) are already clearly met. *See Litz*, 772 F.3d at 5; *Anani*, 730 F.3d at 149. In other words, *Anani* and *Litz* involved plaintiffs who, like Orton in our previous decision and unlike Hughes and McDonald here, were undisputedly guaranteed weekly base salaries above the qualifying level.

*Anani*, for one, involved a pharmacist whose "salary was based on a forty-four hour work week," and whose "base weekly salary exceeded $1250 at all pertinent times" and "was guaranteed." 730 F.3d at 147. We know that these facts were important to the Second Circuit because they said so in reaching their holding. As they explained:

It is undisputed that, at all pertinent times, appellant's base salary substantially exceeded $455 per week and there were no impermissible deductions. There is also no dispute that appellant's base weekly salary was guaranteed, i.e. to be paid regardless of the number of hours appellant actually worked in a given forty-four-hour shift. The requirements of C.F.R. §§ 541.600 and 541.602 are thus satisfied with regard to the minimum guaranteed weekly amount being paid "on a salary basis."

*Id.* at 148. "We perceive no cogent reason," they ultimately concluded, "why the requirements of C.F.R. § 541.604 must be met by an employee meeting the requirements of C.F.R. § 541.601," as spelled out further in § 541.602(a). *Id.* at 149. Here, by contrast, to say that Hughes and McDonald "meet[] the requirements of C.F.R. § 541.601," as spelled out further in § 541.602(a), is at best to beg the question: there *is a* "dispute that their base weekly salary was guaranteed," as well as a dispute that their base salary was calculated "weekly" at all. *See id.* at 148.

Gulf Interstate's comparison to *Litz* fails similarly. In *Litz*, the employer's "compensation plan for the relevant time provided" that all employees in the plaintiffs' position would "be guaranteed a minimum weekly salary of $1,000 whether they bill[ed] any hours or not." 772 F.3d at 2. The plaintiffs had attempted to invoke § 541.604(b), meanwhile, to argue that the employer's weekly guarantee was required "to be reasonably related to plaintiffs' actual pay," *id.* at 5, in keeping with a later clause in § 541.604(b) ("An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, . . . if the employment arrangement also includes a guarantee . . . *and a reasonable relationship exists* between the guaranteed amount and the amount actually earned." (emphasis added)). Like *Anani* and *Orton*, in other words, *Litz* involved plaintiffs for whom the existence of a guarantee was not in question and whose pay was undisputedly calculated "on a weekly, or less frequent basis," *see* 29 C.F.R. § 541.602(a). Thus, although these distinctions may be easily overlooked when any of the foregoing cases is reduced to a soundbite, we do not here contravene the decisions of our sister circuits, nor our own decision in *Orton*. We simply rule that the threshold question of whether there was a guarantee—not at issue in those cases, but very much disputed here—matters for determining whether employees whose pay was at least arguably calculated on a daily basis qualified as exempt.

Although § 541.604(b) provides textual evidence of the importance of a guarantee, we need not decide today whether it is the controlling source of evidence supporting our reading. The section defining the salary-basis test, § 541.602(a), itself indicates the importance of a guarantee: it provides that what "the employee regularly receives each pay period" must not be "subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a); *see also Duffie v. The Michigan Grp., Inc.*, No. 14-CV-14148, 2016 WL 28987, at *4 (E.D. Mich. Jan. 4, 2016) ("Employers are still required to make a showing that an employee's 'predetermined' pay was not subject to reduction."), *reconsid. on other grounds sub nom. Duffie v. Michigan Grp., Inc.–Livingston*, No. 14-CV-14148, 2016 WL 8259511 (E.D. Mich. Jan. 15, 2016). Indeed, the Second Circuit in *Anani*, which Gulf Interstate itself points us to, clearly read § 541.602(a) as requiring such a guarantee. *See Anani*, 730 F.3d at 148 (reciting the requirements of § 541.602(a) and then explaining that there was "no dispute that appellant's base weekly salary was guaranteed, i.e. to be paid regardless of the number of hours appellant actually worked in a given forty-four-hour shift"). Thus, whether one looks to the phrase "includes a guarantee," 29 U.S.C. § 541.604(b), or to the phrase "which amount is not subject to reduction," 29 C.F.R. § 541.602(a), it is legally significant whether Hughes and McDonald's weekly salary was a matter of right or a matter of grace.

It bears noting that this understanding of the governing regulations is not only consistent with our own decision in *Orton* and our sister circuits' decisions in *Litz* and *Anani*, but also accords with Department of Labor guidance. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, Fair Labor Standards Act (July 9, 2003), 2003 WL 23374601, at *2 ("If a pay system compensates employees who are claimed to be exempt on the basis of hourly wage rates computed from their actual hours worked each week, it is necessary to determine whether a salary guarantee is in effect and operational. Payment on an hourly basis without an operative salary guarantee does not qualify as a 'salary basis' of payment within the meaning of the regulations."). That guidance applies just as well here, where Hughes and McDonald have introduced evidence to suggest that their pay was not calculated hourly, but daily. If Hughes and McDonald are to qualify as exempt under § 541.601, in short, it matters whether their minimum

weekly salary was in fact guaranteed, or whether it was simply something that Gulf Interstate had not so far availed itself of its right to reduce.[6]

**C.  Whether There Was a Guarantee Here**

On the record before us, there is a genuine issue of material fact as to whether Hughes and McDonald were guaranteed a qualifying minimum weekly salary.  A genuine issue of material fact exists, as we noted above, when "the record taken as a whole could . . . lead a rational trier of fact to find for the non-moving party." *See Matsushita*, 475 U.S. at 587.  And in conducting this review, "we must view all evidence in the light most favorable to the nonmoving party." *Kleiber*, 485 F.3d at 868.  Here, while Gulf Interstate has established that Hughes and McDonald were paid during the time that each was employed on the Ohio pipeline project in a way that was *consistent with* a weekly guarantee, it has not proven unreasonable the conclusion that these payments were matters of grace rather than right. *See, e.g.*, R. 31-1 (Hughes Decl., Ex. 1) (Page ID #154) ("Salary:  $337.00/Day Worked."); R. 93-2 (Sprick Dep., Ex. 3) (Page ID #3182) (noting that the "[d]ay rate" would be "paid on days worked"); R. 93-2 (Sprick Dep., Ex. 12) (Page ID #3241) (stating that inspectors are "[p]aid for days worked only").  In light of Hughes and McDonald's evidence, the standard on summary judgment, and the Supreme Court's guidance that "exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit," *Arnold*, 361 U.S. at 392, we cannot say that Hughes and McDonald lose as a matter of law.

The "verbal guarantees" that Gulf Interstate asserts that Hughes and McDonald received "at the outset of their employments," Appellee's Br. at 31, do not change this result.  To be sure, they offer *evidence* of a guarantee.  But an exemption is an affirmative defense, and thus it is Gulf Interstate's burden to prove. *See, e.g.*, *Orton*, 668 F.3d at 847.  Oral evidence submitted by Gulf Interstate that contradicts written evidence submitted by Hughes and McDonald may well

---

[6]The record does not disclose, nor is it necessary for us to determine, reasons why a business might pay its employees for days that it is not obligated to pay them.  It is possible, for example, that providing such pay is good for morale, or administratively efficient, or simply a gratuity when times are good.  The important point here is simply that if an employer wishes to pay its employees on a daily, hourly, or shift basis, then those employees will not be exempt under § 541.601 unless (alongside the other requirements) they are nevertheless *guaranteed* a qualifying minimum weekly salary.

weaken Hughes and McDonald's case, and perhaps it will convince a jury to find for Gulf Interstate. But it does not extinguish the genuine issue of material fact here.

Nor does the pay that Hughes and McDonald actually received suffice. "It is not enough under the salary-basis test for an employer to show only that the employee received the same amount of pay each week, as doing so would negate the remainder of the test." *Duffie*, 2016 WL 28987, at *4. While it is possible that an employer who provided consistent weekly pay for decades could fall back on that longstanding practice as stronger evidence of a guarantee, that is not this case. Here, instead, the record indicates that Hughes and McDonald worked as welding inspectors on the pipeline project for approximately fifteen and eight months, respectively. *See* R. 31-1 (Hughes Decl.) (Page ID #151); R. 31-2 (McDonald Decl.) (Page ID #155). That Gulf Interstate paid them in a way that is consistent with a guarantee during this relatively short period of time does not establish, in the face of the contradictory evidence and for purposes of summary judgment, that Gulf Interstate gave them the protection of a guarantee.

Arguing in the alternative that it *did* provide Hughes and McDonald with a guarantee, Gulf Interstate reads our language in *Douglas v. Argo-Tech Corp.*, 113 F.3d 67 (6th Cir. 1997), to mean that "this Court equated the 'predetermined amount' of the salary basis test with a 'guarantee.'" Appellee's Br. at 24 (quoting *Douglas*, 113 F.3d at 71). In support of that purported equivalence, Gulf Interstate cites our statement that "[a]n employee is salaried even if his compensation consists of a guaranteed predetermined amount plus additional compensation." *Id.* (quoting *Douglas*, 113 F.3d at 71). But that sentence does not mean that a "guarantee" is the same thing as a "predetermined amount" under circuit precedent. First of all, Gulf Interstate's theory runs counter to foundational rules of interpretation: if "guaranteed predetermined amount" means the same thing as "predetermined amount," then the word "guaranteed" is surplusage. *Cf. Corley v. United States*, 556 U.S. 303, 314 (2009) (identifying as "one of the most basic interpretive canons[] that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . .'" (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004))). Gulf Interstate, in other words, asks us to interpret our prior precedent as having defined this equation not only *sub silentio*, but also by speaking in superfluities. That is a hard proposition to accept, especially given the standard of

review on summary judgment and the narrow construction to be given exemptions. It is equally hard to accept given dictionary definitions of the word "guarantee." *See, e.g.*, *Guarantee*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("The assurance that a contract or legal act will be duly carried out."); *Guarantee*, Merriam-Webster Unabridged, http://unabridged.merriam-webster.com/unabridged/guarantee ("[A]n assurance for the fulfillment of a condition."). The operative idea behind a guarantee, in other words, is in this context that the employer is contractually obligated not to change its mind and reduce whatever amount it previously determined to provide. Because a reasonable trier of fact could conclude that Hughes and McDonald received no such guarantee from Gulf Interstate, Gulf Interstate cannot prevail on summary judgment.[7]

### III. CONCLUSION

It may seem strange, on its face, that employees who earned an annualized rate of more than $100,000 did not necessarily qualify as "highly compensated employees." But regardless of whether good reasons exist, we must follow the legal meaning of the terms rather than our intuitive sense of the meaning of the words. Because § 541.602(a) and § 541.604(b) make clear that it matters whether Hughes and McDonald were guaranteed a qualifying weekly salary, and because a reasonable trier of fact could find that there was no guarantee, we **REVERSE** the district court's grant of summary judgment and **REMAND** for further proceedings.

---

[7]Another way to look at this case, accordingly, is to consider a hypothetical universe in which Gulf Interstate had begun refusing to provide Hughes and McDonald with six days of work per week and Hughes and McDonald had sued for breach of contract. To accept Gulf Interstate's argument that there was indisputably a guarantee is tantamount to agreeing that Hughes and McDonald would have been entitled to summary judgment for their hypothetical breach-of-contract claim. And yet it is hard to believe that Hughes and McDonald would have been entitled to prevail as a matter of law if they had come into court citing Gulf Interstate's "verbal guarantees," Appellee's Br. at 31; *see* R. 90-9 (Hughes Dep.) (Page ID #1637); 90-10 (McDonald Dep.) (Page ID #1750, 1752); R. 90-20 (Williamson Dep.) (Page ID #2684), in the face of written evidence that they would be paid a "[d]ay rate," *see* 93-2 (Sprick Dep., Ex. 3) (Page ID #3182); *see also* R. 31-1 (Hughes Decl., Ex. 1) (Page ID #154) ("Salary: $337.00/Day Worked."). An employer, in other words, cannot have it both ways: it must either provide its employees with the clear protection of a guaranteed weekly salary against the eventuality of its deciding to reduce their days, or it must forgo the benefits of a clear exemption. Here, although the record indicates that Hughes and McDonald never suffered the vicissitudes of Gulf Interstate choosing to reduce their days, there is far less evidence that they were *protected against* such vicissitudes.