**REVISED August 22, 2019**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20808

United States Court of Appeals
Fifth Circuit
**FILED**
August 21, 2019

Lyle W. Cayce
Clerk

JEFF FALUDI,

        Plaintiff – Appellant / Cross-Appellee,

v.

U.S. SHALE SOLUTIONS, L.L.C.,

        Defendant – Appellee / Cross-Appellant.

Appeals from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, ELROD, and HO, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Appellant Jeff Faludi, a former practicing attorney, took a consulting job at an oil and gas services company. When Faludi left the company, he filed this lawsuit under the Fair Labor Standards Act (FLSA), seeking to recover unpaid overtime wages. Because Faludi was exempt from the FLSA, we AFFIRM the district court's summary judgment in favor of his former employer. However, because the district court did not state its reasons for declining to award costs to the prevailing party, we VACATE the award of costs and REMAND that issue to the district court.

No. 17-20808

I.

Jeff Faludi became a licensed lawyer in 1998, and he practiced law for sixteen years until he allowed his license to lapse. Around the same time, one of his former colleagues offered him a consulting position at a newly-formed oil and gas services company, U.S. Shale Solutions, L.L.C. Faludi accepted the position, and the parties signed an "Independent Contractor Master Consulting Services Agreement" in November 2014.

Under the agreement, Faludi agreed to work for U.S. Shale for "an indefinite period of time" at a rate of $1,000 per day for every day he worked in Houston and $1,350 per day for every day he worked outside of Houston. The agreement required Faludi to submit invoices to U.S. Shale for payment twice a month. The agreement also contained a non-compete clause prohibiting Faludi from working for U.S. Shale's competitors while the agreement was in effect and for one year after its termination.

During the approximately sixteen months that Faludi worked for U.S. Shale, he submitted invoices to U.S. Shale once or twice a month. Although his day rate applied regardless of how many hours he worked, he often billed U.S. Shale for less than the day rate when he did not work a full day. Faludi testified that he did this voluntarily, and U.S. Shale paid the requested amounts without asking why Faludi had billed for less than his day rate. Even with these prorated invoices, Faludi was paid at least $1,000 for every week in which he performed work for U.S. Shale, and his annual compensation was approximately $260,000.

Faludi left U.S. Shale in March 2016 after an internal reorganization. Shortly thereafter, he filed this lawsuit against the company for unpaid overtime wages he claimed he was owed under the FLSA. U.S. Shale sought summary judgment in the district court, arguing that Faludi was an independent contractor and thus not subject to the FLSA, or alternatively that

2

No. 17-20808

he was an exempt employee under either the "practice of law" exemption or the "highly compensated employee" exemption to the FLSA. Faludi also sought a partial summary judgment on the ground that he was an employee under the FLSA and did not fall under any exemption.

The district court determined that genuine issues of material fact existed as to whether Faludi was an employee or an independent contractor and whether he fell within the FLSA's practice of law exemption. However, the district court granted U.S. Shale's summary judgment motion because it found that Faludi was exempt as a matter of law under the highly compensated employee exemption to the FLSA. Although U.S. Shale was the prevailing party, the district court did not award U.S. Shale costs, nor did it explain why it declined to do so. Faludi appeals the adverse summary judgment, and U.S. Shale cross-appeals on the issue of costs.

## II.

We review a district court's grant of summary judgment de novo. *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). Where the parties filed cross-motions for summary judgment, "we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 380 (5th Cir. 2019) (quoting *Duval v. N. Assurance Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013)). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review a district court's award of costs for an abuse of discretion. *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010).

3

No. 17-20808

III.

Under the FLSA, an employer must pay overtime compensation to its non-exempt employees who work more than forty hours a week. *Cleveland v. City of Elmendorf*, 388 F.3d 522, 526 (5th Cir. 2004). In contrast, independent contractors are not entitled to overtime under the FLSA. *See* 29 U.S.C. § 207(a)(1) ("[N]o employer shall employ any of his *employees* . . . for a workweek longer than forty hours unless such *employee* receives [overtime] compensation[.]" (emphasis added)); *Parrish*, 917 F.3d at 379 (explaining that to make a *prima facie* case for unpaid overtime, a plaintiff must prove, *inter alia*, that "there existed an employer-employee relationship during the unpaid overtime periods claimed"). In addition, the FLSA describes various types of exempt employees who are excluded from the overtime requirement. *See* 29 U.S.C. §§ 207, 213. Relevant here, "the FLSA excludes from this requirement those employees working in a bona fide executive, administrative or professional capacity." *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000) (citing 29 U.S.C. § 213(a)(1)).

Faludi argues on appeal that he was an employee and that no FLSA exemption applied to him, so U.S. Shale was required to pay him overtime under the statute. U.S. Shale counters that Faludi was either an independent contractor or, in the alternative, an exempt employee under the highly compensated employee and practice of law exemptions to the FLSA—both of which are regulatory expansions on the "bona fide executive, administrative, or professional" exemption in 29 U.S.C. § 213(a)(1). *See* 29 C.F.R. § 541.601 (highly compensated employee exemption); 29 C.F.R. § 541.304(a)(1) (practice of law exemption). We agree with the conclusion reached by the district court: Faludi was exempt from the FLSA as a highly compensated employee and was therefore not entitled to overtime as a matter of law.

4

"[T]he ultimate decision whether [an] employee is exempt from the FLSA's overtime compensation provisions is a question of law." *Lott*, 203 F.3d at 331. The employer has the burden of establishing that an exemption applies by a preponderance of the evidence. *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 581 (5th Cir. 2013). Under the Supreme Court's decision in *Encino Motorcars*, we must give FLSA exemptions a "fair reading" rather than narrowly construing them against the employer. *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018); *see also Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 579 (5th Cir. 2018).

Under the version of the highly compensated employee exemption in effect when Faludi worked for U.S. Shale, an employee is exempt from the FLSA's overtime requirements if (1) he receives "total annual compensation of at least $100,000"; and (2) he "customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee[.]" Highly Compensated Employees, 69 Fed. Reg. 22,122, 22,269 (April 23, 2004) (current version at 29 C.F.R. § 541.601(a)). The employee also "must be compensated on a salary basis at a rate of not less than $455 per week[.]" 29 C.F.R. § 541.600(a). The parties agree that Faludi received at least $100,000 in annual compensation and that he performed the duties of an executive, administrative, or professional employee under the regulation. Thus, the only remaining issue is whether Faludi was compensated on a "salary basis." In relevant part, the regulations provide the following with regard to the salary basis requirement:

> An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. . . . [A]n exempt employee must receive the full salary for any week in

which the employee performs any work without regard to the number of days or hours worked. Exempt employees need not be paid for any workweek in which they perform no work.

29 C.F.R. § 541.602(a).

Faludi contends that his day rate of $1,000 (or $1,350 for work outside of Houston) did not satisfy the salary basis requirement because it was not calculated "on a weekly, or less frequent basis." 29 C.F.R. § 541.602(a). U.S. Shale responds that Faludi was nonetheless compensated on a salary basis because his day rate guaranteed him $1,000 for every day that he worked, so he would receive more than the minimum of $455 per week for any week in which he performed work. The text of the regulation favors U.S. Shale.

Faludi's $1,000 day rate plainly constituted "a rate of not less than $455 per week" under 29 C.F.R. § 541.600(a): If Faludi worked for even one hour in a given week, he was guaranteed $1,000, which exceeds the regulatory minimum of $455. And although Faludi contends that 29 C.F.R. § 541.602(a) required his compensation to be *calculated* "on a weekly, or less frequent basis," the text of the regulation only provides that Faludi must have "regularly *receive[d]* each pay period on a weekly, or less frequent basis, a predetermined amount[.]" *But see Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183, 189 (6th Cir. 2017) (indicating without analysis that 29 C.F.R. § 541.602(a) contemplates that an employee's salary will be "calculated on a weekly, or less frequent basis" (internal quotation marks omitted)). Faludi's independent contractor agreement set a predetermined amount of compensation he was to receive—$1,000 per day—and provided for the submission and payment of invoices on a less-frequent-than-weekly basis— twice a month. Thus, Faludi regularly *received* a predetermined amount of compensation on a weekly or less frequent basis in accordance with 29 C.F.R. § 541.602(a).

No. 17-20808

Faludi also argues that his compensation did not meet the salary basis requirement because it was "subject to reduction because of variations in the . . . quantity of the work performed." 29 C.F.R. § 541.602(a). Specifically, Faludi emphasizes that he often did not bill U.S. Shale for his full day rate when he worked less than a day and that U.S. Shale approved and paid these prorated invoices. We reject this argument. Faludi's voluntary reductions to his own compensation did not render it "subject to reduction" under the regulation. To hold otherwise would permit employees to preclude reliance on the FLSA's "bona fide executive, administrative, or professional" exemption by intentionally reducing their own pay.

Finally, Faludi suggests that the requirements in 29 C.F.R. § 541.604(b) prevented him from qualifying as a highly compensated employee. That regulation stipulates that:

> An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned. The reasonable relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek.

29 C.F.R. § 541.604(b). Faludi points out that no reasonable relationship existed between his $1,000 day rate and the amount he actually earned each week, which was often four or five times his day rate. Faludi's argument once again misses the mark: Whether his compensation satisfied the reasonable relationship test is irrelevant because 29 C.F.R. § 541.604(b) does not apply to employees who meet the requirements of the highly compensated employee exemption set out in 29 C.F.R. §§ 541.600, 541.601, and 541.602. *Anani v. CVS*

7

No. 17-20808

*RX Servs., Inc.*, 730 F.3d 146, 149 (2d Cir. 2013); *Litz v. Saint Consulting Grp., Inc.*, 772 F.3d 1, 5 (1st Cir. 2014).  Because Faludi met these requirements— specifically, because his $1,000 day rate guaranteed him at least $455 per week and he regularly received that predetermined amount on a weekly or less frequent basis—he was exempt from the FLSA's overtime requirements as a highly compensated employee.

We therefore hold that the district court correctly granted summary judgment on the ground that Faludi fit within the highly compensated employee exemption to the FLSA.  As a result, we need not determine whether he was an employee or independent contractor or whether he also fit within the practice of law exemption.

IV.

We next turn to the question of whether the district court erred in declining to award U.S. Shale costs as the prevailing party.  U.S. Shale contends that it was entitled to costs under Federal Rule of Civil Procedure 54(d) because "[t]he FLSA does not preclude an award of costs to a prevailing defendant."  As a result, U.S. Shale urges us to reverse and remand with an instruction to the district court to award U.S. Shale costs on remand.  Faludi concedes that we must reverse and remand on the costs issue, but he asks us to remand for the district court to consider *whether* U.S. Shale is entitled to costs, and if the district court again declines to award costs to U.S. Shale, to explain its reasons for doing so.  We agree with Faludi.

Rule 54(d) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d).  Under the FLSA, "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, *and costs of the action*." 29 U.S.C. § 216(b) (emphasis added).  As U.S. Shale observes and Faludi

8

concedes, this provision in the FLSA does not preclude an award of costs to a prevailing defendant. And we have explained that "a court 'may neither deny nor reduce a prevailing party's request for cost[s] without first articulating some good reason for doing so.'" *Pacheco v. Mineta*, 448 F.3d 783, 794 (5th Cir. 2006) (quoting *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985)). While the district court's decision not to award costs to U.S. Shale may have been well-reasoned, its final judgment does not reveal that reasoning. Accordingly, we must vacate the award of costs and remand the issue to the district court. On remand, the district court should award U.S. Shale its costs or, in the alternative, provide its reasons for declining to do so. *See id.* at 795 ("[W]e vacate the award of costs and remand for a re-determination of whether (or to what extent) costs should be awarded to the prevailing party and, if not, the reasons for that denial.").

## V.

The district court properly concluded that Faludi was not entitled to overtime compensation under the FLSA because he was exempt as a highly compensated employee. We therefore AFFIRM summary judgment in favor of U.S. Shale. We VACATE the district court's award of costs and REMAND that issue, directing the district court to either award costs to U.S. Shale or state its reasons for declining to do so.

No. 17-20808

JAMES C. HO, Circuit Judge, dissenting:

If we were limited to the statutes enacted by Congress, as our Founders understood the Constitution to require, I would have voted with the majority. But we are also bound by regulations issued by the Department of Labor, and because I read those differently from the majority, I respectfully dissent.

The Constitution vests "[a]ll legislative powers herein granted" in Congress. U.S. CONST. art. I, § 1. So the power to impose rules restricting liberty rests exclusively in Congress. As Justice Gorsuch recently wrote, joined by the Chief Justice and Justice Thomas: "The Constitution promises that *only* the people's elected representatives may adopt new federal laws restricting liberty," and "[n]o one, not even Congress, ha[s] the right to alter that arrangement." *Gundy v. United States*, 139 S. Ct. 2116, 2131, 2133 (2019) (Gorsuch, J., dissenting) (emphasis added). Our Founders' reasoning was simple: "They believed the new federal government's most dangerous power was the power to enact laws restricting the people's liberty. An 'excess of law-making' was, in their words, one of 'the diseases to which our governments are most liable.'" *Id.* at 2134 (quoting THE FEDERALIST No. 62 (James Madison)).

This understanding of the legislative power has lain dormant for nearly a century. But four members of the Supreme Court have recently expressed interest in breathing life back into the doctrine. *See id.* at 2130–31 (Alito, J., concurring); *id.* at 2131–43 (Gorsuch, J., dissenting). *See also Dep't of Transp. v. Ass'n of Am. Railroad*s, 135 S. Ct. 1225, 1242 (2015) (Thomas, J., concurring) ("The function at issue here is the formulation of generally applicable rules of private conduct. Under the original understanding of the Constitution, that function requires the exercise of legislative power."); *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 487 (2001) (Thomas, J., concurring).

This case provides one modest illustration of how restoring the Founders' vision can affect how we decide cases.

If we were looking only at statutes enacted by Congress, I would join my colleagues in affirming the district court, because it seems obvious that Jeff Faludi was "employed in a bona fide . . . professional capacity" and therefore exempt from the overtime requirements of the Fair Labor Standards Act.  29 U.S.C. § 213(a)(1).

But Congress has delegated to the Secretary of Labor the power to both "define[] and delimit[]" the scope of the professional exception, and thereby determine who shall and shall not be subject to federal overtime rules.  *Id.*  And under my best reading of the relevant Labor Department regulations, I part company with my colleagues.

That is because the method by which U.S. Shale compensates Faludi does not satisfy the "salary-basis" test set forth by the Secretary:

> An employee will be considered to be paid on a "salary basis" within the meaning of these regulations *if the employee regularly receives* each pay period *on a weekly, or less frequent basis*, a *predetermined amount* constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked.

29 C.F.R. § 541.602(a) (emphases added).

As the majority correctly notes, U.S. Shale paid Faludi on a daily, not weekly, rate.  Faludi did not "regularly receive" a "predetermined amount" on a weekly basis.  Instead, his pay depended on the number of days he worked.

U.S. Shale creatively argues that Faludi's daily rate of $1,000 can be recharacterized as a *weekly* rate of *at least* $1,000, so long as he works at least one day a week.  But that does not alter the fact that Faludi receives a "predetermined amount" on a daily basis, and not "on a weekly, or less frequent basis."  Nor can I reconcile U.S. Shale's theory with the requirement that "an

exempt employee must receive the *full salary* for any week in which the employee performs any work *without regard to the number of days or hours worked.*" *Id.* (emphases added).

My reading of 29 C.F.R. § 541.602(a) is bolstered by 29 C.F.R. § 541.604(b), which provides:

> An exempt employee's earnings may be computed on . . . a daily. . . basis, without . . . violating the salary basis requirement, if [1] the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and [2] a reasonable relationship exists between the guaranteed amount and the amount actually earned.

29 C.F.R. § 541.604(b). *See also Hughes v. Gulf Interstate Field Servs. Inc.*, 878 F.3d 183, 189 (6th Cir. 2017) (relying on 29 C.F.R. § 541.604(b) because "[t]he text of § 541.602(a) does not tell us what to do when an employee's salary is not clearly calculated 'on a weekly, or less frequent basis'").

According to U.S. Shale, the "guaranteed" "weekly required amount" is $1,000. But that weekly guarantee does not have a "reasonable relationship" with Faludi's total compensation of approximately $260,000, as the regulations make clear. *See* 29 C.F.R. § 541.604(b) ("The reasonable relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek. Thus, for example, if the weekly salary level is $913, an exempt employee guaranteed compensation of at least $1,000 for any week in which the employee performs any work, and who normally works four or five shifts each week, may be paid $300 per shift without violating the salary basis requirement.").

Accordingly, I would reverse and remand for further proceedings, to allow the district court to address in the first instance whether Faludi is an independent contractor and therefore not entitled to overtime.

No. 17-20808

* * *

Under the Constitution, the people have the right to fire those who make the law. "[B]y directing that legislating be done only by elected representatives in a public process, the Constitution sought to ensure that the lines of accountability would be clear: The sovereign people would know, without ambiguity, whom to hold accountable for the laws they would have to follow." *Gundy*, 139 S. Ct. at 2134 (Gorsuch, J., dissenting) (citations omitted). *See also id.* at 2133–34 ("'[N]or can the people be bound by any laws but such as are enacted by those whom they have chosen and authorised to make laws for them.'") (quoting JOHN LOCKE, THE SECOND TREATISE OF CIVIL GOVERNMENT AND A LETTER CONCERNING TOLERATION § 141).

That vision is eviscerated when the legislative power is exercised, not by duly elected members of Congress, but by Executive Branch officials who, once appointed, are effectively untouchable by the people.[1]

Perhaps the Supreme Court will someday revive the nondelegation doctrine and restore the Founders' vision of the Constitution.[2] But until then, I agree with the majority that we are duty-bound to follow Labor Department regulations. We simply disagree on the best reading of those regulations. For that reason, I respectfully dissent.

---

[1] *See also Voices for Int'l Bus. & Educ., Inc. v. NLRB*, 905 F.3d 770, 781 (5th Cir. 2018) (Ho, J., concurring) ("[I]f law is to be made or changed, it must be done as the Constitution commands—through Article I, Section 7, not Article II, Section 2.").

[2] The Supreme Court is not the only branch of government that can play a role. In West Virginia, for example, administrative agencies can promulgate regulations, but only if those regulations are first approved by the Legislature. *See* W. VA. CODE § 29A-3-11, 12.