# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2167

_____

Craig Coates, et al.

*Plaintiffs - Appellees*

v.

Dassault Falcon Jet Corp.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 15, 2020
Filed: June 10, 2020

_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.

_____

LOKEN, Circuit Judge.

Craig Coates and Edwin Smith commenced this action under the Fair Labor Standards Act of 1938 ("FLSA"), alleging that their employer, Dassault Falcon Jet Corp. ("Falcon Jet"), violated the FLSA, 29 U.S.C. § 207(a)(1), and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-211(a), when it failed to pay team leaders and production liaisons not less than one and one-half times their regular rates for hours worked in excess of forty per week after June 6, 2014. Sixteen

other team leaders and production liaisons opted into the collective lawsuit (collectively, "Plaintiffs"). See 29 U.S.C. § 216(b). Falcon Jet contends that team leaders and production liaisons at its airplane components facility in Little Rock, Arkansas are exempt from FLSA and AMWA overtime compensation requirements because they are executive or administrative employees and highly-compensated employees performing executive, administrative, or professional duties. See 29 U.S.C. § 213(a)(1); Ark. Code R. § 010.14.1-106(B)(1), (B)(1)(c).

Ruling on cross-motions for summary judgment, the district court held that the exemptions do not apply because Falcon Jet failed to provide sufficient evidence that Plaintiffs were paid on a salary basis. Following entry of a Consent Judgment awarding Plaintiffs $167,377.91 in liquidated damages and preserving Falcon Jet's right to appeal the salary-basis determination, the district court denied Falcon Jet's motions to reconsider and amend the consent judgment. Falcon Jet appeals the resulting final order, arguing that material disputed issues of fact precluded the grant of summary judgment in Plaintiffs' favor. Reviewing the grant of summary judgment *de novo* and considering the evidence in the light most favorable to Falcon Jet, the non-moving party, we agree and therefore reverse. See Grage v. N. States Power Co. -- Minn., 813 F.3d 1051, 1054 (8th Cir. 2015).

## I. FLSA Exemption Principles[1]

For an employer such as Falcon Jet, the FLSA exempts from its overtime requirements "any employee employed in a bona fide executive, administrative, or professional capacity . . . as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor]." 29 U.S.C. § 213(a)(1); see Fife v.

_____

[1]The parties agree that the FLSA exemption analysis applies to Plaintiffs' claims under the AMWA as well. See Ark. Code R. § 010.14.1-106(B)(1)(a); Ark. Dep't of Veterans Affairs v. Okeke, 466 S.W.3d 399, 403 (Ark. 2015).

Harmon, 171 F.3d 1173, 1175 (8th Cir. 1999). A separate regulation governs each exemption. See 29 C.F.R. §§ 541.100 (executive), 541.200 (administrative), 541.300 (professional).[2] To establish any exemption, an employer must establish that the employee's "primary duty" is the performance of exempt work, 29 C.F.R. § 541.700; that he is paid not less than the minimum salary level, § 541.600; and that he is paid on a "salary basis," § 541.602, the issue on this appeal. See Grage, 813 F.3d at 1054 (employer's burden of proof).

The regulations provide that an employee is paid on a salary basis "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). The Secretary first adopted this general definition in 1944. It is subject to numerous interpretive rules:

- "An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement,

_____

[2]Although the parties and the district court refer to a "highly compensated employee exemption," this is a less burdensome way to prove an executive, administrative, or professional exemption, not a separate exemption. "A high level of compensation is a strong indicator of an employee's exempt status . . . . Thus, a highly compensated employee will qualify for exemption if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee . . . ." 29 C.F.R. § 541.601(c); see generally U.S. Dep't of Labor, Wage & Hour Div., Defining & Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122, 22172-75 (April 23, 2004) (hereafter cited as Defining and Delimiting the Exemptions). Whether one or more Plaintiffs qualified as highly compensated employees may be an issue on remand but is not relevant to the threshold "salary basis" issue on appeal.

if the payment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked . . . ." § 541.604(b).

- "[T]he exemption is not lost if an exempt employee who is guaranteed [the minimum weekly salary amount] also receives additional compensation based on hours worked for work beyond the normal workweek. Such additional compensation may be paid on any basis (e.g. . . . straight-time hourly amount . . .), and may include paid time off." § 541.604(a).

- Employers "may take deductions from [salaried employee] leave accounts" and may require exempt employees "to record and track hours," so long as the employee's predetermined salary is not reduced. Ellis v. J.R.'s Country Stores, Inc., 779 F.3d 1184, 1200 (10th Cir. 2015). Exempt status "is only affected by monetary deductions for work absences and not by non-monetary deductions from fringe benefits such as personal or sick time." Schaefer v. Ind. Mich. Power Co., 358 F.3d 394, 400 (6th Cir. 2004); see Defining & Delimiting the Exemptions, 69 Fed. Reg. at 22178. Employers can "make deductions for absences from an exempt employee's leave bank in hourly increments, *so long as the employee's salary is not reduced*." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on FLSA (Jan. 16, 2009), 2009 WL 649020, at *2 (emphasis added). Several circuits have applied this guidance. See, e.g., McBride v. Peak Wellness Center, Inc., 688 F.3d 698, 705 (10th Cir. 2012).

- "Deductions from pay may be made when an exempt employee is absent from work for one or more full days for personal reasons . . . ." § 541.602(b)(1); see Guerrero v. J.W. Hutton, Inc., 458 F.3d 830, 835-36 (8th Cir. 2006). But reductions for partial day absences are inconsistent with a salary that is "not subject to reduction because of variations in the . . . quantity of the work performed." See Defining & Delimiting the Exemptions, 69 Fed. Reg. at 22176.

-4-

- "An employer is not required to pay the full salary for weeks in which an exempt employee takes unpaid leave under the Family and Medical Leave Act [FMLA]." § 541.602(b)(7).

- Deductions from pay of exempt employees may be made for infractions of safety rules of major significance and for infractions of workplace conduct rules. § 541.602(b)(4)-(5).

- "An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis. An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis." § 541.603(a).[3]

This is a complex, intricate regulatory scheme, one that has changed relatively little in the last 80 years. In Auer v. Robbins, the Supreme Court noted that the FLSA "grants the Secretary broad authority to 'defin[e] and delimi[t]' the scope of the exemption." The regulation requiring that an exempt employee be paid on a "salary basis" -- now found in 29 C.F.R. § 541.602(a) -- was the Secretary's "chosen approach" to exercising that authority, and "we must sustain the Secretary's approach so long as it is 'based on a permissible construction of the statute.'" 519 U.S. 452, 456-57 (1997), quoting Chevron U.S.A. Inc. v. Natural Resources Defense Council,

---

[3]This 2004 regulation altered the Secretary's prior position that an exemption was lost if there was a "significant likelihood" of improper deductions. See Defining & Delimiting the Exemptions, 69 Fed. Reg. at 22180. Under the present regulation, the significance of improper deductions is determined by objective facts, not by speculating whether the employer had reduction authority it did not use, a position adopted by the Ninth Circuit in Abshire v. Cty. of Kern, Cal., 908 F.2d 483 (9th Cir. 1990), cert. denied, 498 U.S. 1068 (1991). We rejected the Ninth Circuit's "strict interpretation of the salary basis test" as it applied to public sector employees in McDonnell v. City of Omaha, Neb., 999 F.2d 293, 297 (8th Cir. 1993), cert. denied, 510 U.S. 1163 (1994).

Inc., 467 U.S. 837, 842-43 (1984). The Secretary promulgated revised salary basis regulations in 2004 after full notice and comment rulemaking, which must be given the force and effect of law in deciding FLSA exemption issues. See generally Mayo Found. for Med. Educ. & Research v. United States, 562 U.S. 44, 55-58 (2011). Courts must rely on these regulations, considered in the context of the Department's lengthy preamble in the Federal Register, "when ruling on the potentially ambiguous concept of intent to pay a salary." Ellis, 779 F.3d at 1199.[4] These issues may not be decided on the basis of what a judge concludes is the "plain meaning" of a common term like "salary" that is obviously ambiguous in the context of the statute or regulation at issue. See Mayo Found. for Med. Educ. & Research v. United States, 568 F.3d 675, 679-80 (8th Cir. 2011), aff'd, 562 U.S. at 52-53.

## II. Falcon Jet's Payroll Procedures

The summary judgment record includes a Falcon Jet Payroll Notification, effective October 26, 2015, advising team leader Coates of a "merit increase" changing his compensation to an "annual salary" of $74,244.96 and a "new rate" of $2,855.5754. Production liaison Smith received a notice effective the same day increasing his compensation to an "annual salary" of $71,549.57 and a "new rate" of

---

[4]The Supreme Court in Auer also ruled that the Department of Labor's interpretation of the regulations submitted in an amicus brief was "controlling unless 'plainly erroneous or inconsistent with the regulation.'" Id. at 461 (quotation omitted). This was a more controversial ruling, which came to be known as "Auer deference'" It was substantially restricted, if not all but overruled, in Kisor v. Wilkie, 139 S. Ct. 2400 (2019). We deal here with the Secretary's regulations interpreting an ambiguous statutory exemption, not with the Secretary's interpretation of the regulations. As Chief Justice Roberts noted, concurring in part in the plurality opinion in Kisor, "Issues surrounding judicial deference to agency interpretation of their own regulations are distinct from those raised in connection with judicial deference to agency interpretations of the statutes enacted by Congress." Id. at 2425, citing Chevron.

$2,751.9064. Each team leader and production liaison Plaintiff received a comparable Payroll Notification. The record also includes a form completed by plaintiff Robert Anderson when he was promoted to team leader stating that his compensation switched from hourly wage to annual salary.

Falcon Jet paid Plaintiffs bi-weekly. Though it classified team leaders and production liaisons as exempt salaried employees, it required them to clock in and out of work and to track the projects on which they worked on an hourly basis. This enabled Falcon Jet to accurately determine project costs for cost accounting purposes and to pay Plaintiffs straight-time overtime compensation for hours they were "directed" to work over 40 hours in a one-week period. For "regular" hours worked, Falcon Jet calculated the hourly rate by dividing each employee's annual salary by 2,080 -- 40 hours per week multiplied by 52 weeks in a year.[5] When a team leader or production liaison recorded fewer than 40 hours in a work week, Falcon Jet deducted available time from one of the employee's paid leave banks, usually vacation or sick time. It also deducted at the regular hourly rate for each hour the employee did not work using unpaid FMLA time.

### III. Discussion

On its face, Falcon Jet's payroll construct was consistent with the above-summarized rules interpreting the Secretary's general definition of salary basis, provided that, in "actual practice," the predetermined bi-weekly salaries were not "subject to reduction because of variations in the quality or quantity of the work performed." This evidence is not, as Plaintiffs assert, a "conclusory and self-serving

_____

[5]This was consistent with the predetermined salary amounts Plaintiffs were told they would receive in the above-described Payroll Notifications. For example, Coates was notified his annual salary would be $74,244.96. This amount divided by 2080 hours times the 80 hours in a bi-weekly pay period equals $2,855.5754, the "new rate" set forth in his Notification.

claim" that Falcon Jet paid them a salary. It is at least *prima facie* evidence that Plaintiffs were compensated on a salary basis. The district court nonetheless ruled that all Plaintiffs were not paid on a salary basis *as a matter of law*. The court primarily relied on Falcon Jet interrogatory responses stating that "Plaintiffs were paid for the hours posted on their time cards," and that "Plaintiffs were paid a salary using an hourly rate multiplied by hours," plus the deposition testimony of a Rule 30(b)(6) witness explaining this system. "But for the word 'salary,'" the court observed, Falcon Jet "described wages paid on an hourly basis," not wages constituting a predetermined amount not subject to reduction based on the quality or quantity of work performed.

The district court's observation reflects a misunderstanding of the governing FLSA standards. Falcon Jet notified Plaintiffs when they received merit increases that they would begin being paid an annual salary at a specific predetermined amount on a bi-weekly basis. The FLSA requires no other contractual "bells and whistles." Rather, the salary basis requirement is substantive -- the predetermined amount must not be subject to reduction based on the quality or quantity of the work performed, a general principle the regulations amplify with a host of special interpretive rules.[6] If Falcon Jet complied with those fact-intensive interpretive rules, Plaintiffs were exempt employees, no matter how much Falcon Jet's method of compensation resembled payroll procedures for the typical hourly wage-earner. See Acs v. Detroit Edison Co., 444 F.3d 763, 769-70 (6th Cir. 2006).

**A.** Falcon Jet argues that its payroll records show that eleven Plaintiffs "received at least their guaranteed minimum compensation amount for every single pay period" -- that is, compensation equivalent to at least 80 hours of work. That fact

---

[6]In adopting 29 C.F.R. § 541.602(a) in the 2004 regulations, the Secretary deleted the term "under the employment agreement" in the prior regulation. See Baden-Winterwood v. Life Time Fitness, Inc., 566 F.3d 618, 627 (6th Cir. 2009).

"end[s] [ ] the Court's consideration of the salary-basis test for these [Plaintiffs]." We disagree. An employer using an hourly-based payroll system may be entitled to summary judgment if there is no evidence of an actual practice of reducing the guaranteed minimum salary of exempt employees, and undisputed evidence shows that no exempt employee was paid less than this amount. See Litz v. Saint Consulting Grp., Inc., 772 F.3d 1, 4 (1st Cir. 2014); Judson v. JM Family Enters., Inc., 212 F. App'x 786, 786 (11th Cir. 2006). But the largely undeveloped summary judgment record in this case includes evidence that the other seven Plaintiffs received arguably improper reductions in pay. In these circumstances, the Secretary has explained why summary judgment declaring the eleven Plaintiffs exempt is not appropriate:

> Because exempt employees in the same job classification working for the same managers responsible for the actual improper deductions may reasonably believe that their salary will also be docked, such employees . . . should also lose their exempt status. . . . [F]inal section 541.603 calls for a case-by-case factual inquiry. . . . [A] corporate-wide policy permitting improper deductions is some evidence that an employer has an actual practice of not paying employees on a salary basis, but not sufficient evidence by itself to cause the exemption to be lost if a manager has never used that policy to make any actual deductions from the pay of other employees.

Defining and Delimiting the Exemptions, 69 Fed. Reg. at 22180-81.

**B.** Plaintiffs argue that summary judgment in their favor must be affirmed because "Falcon Jet cannot overcome the admission" of Senior Human Resource Generalist Richard Cart, who agreed at his deposition that Plaintiffs' salaries were not fixed, but rather fluctuated based on the number of hours worked. This contention requires a close look. Cart was designated a Rule 30(b)(6) witness on a number of topics, including "recording hours" and "payroll records." He initially testified that team leaders and production liaisons "are paid a salary and they're compensated for

any overtime. . . . If there was no overtime directed, they would see the same paycheck." He was then questioned about specific payroll records:

> Q: [I]f there's time recorded that's less than 80 hours in a biweekly pay period for liaisons or team leaders, then the payroll department will present the employee with an option of . . . vacation time or sick time; is that correct?
>
> Cart: That's correct. . . .
>
> Q: And so the employee has a certain amount of vacation and sick time they can use and still be paid for that; is that correct?
>
> Cart: That's correct.
>
> Q: And so once a liaison or team lead uses all of their vacation or sick time, they might not be paid for that time; is that correct?
>
> Cart: Yes.
>
> Q: And that's true of all team leads or liaisons?
>
> Cart: *I would assume so.*
>
> Q: Even though they're salaried.
>
> Cart: Yes.

(Emphasis added.) Cart gave an accurate general description of Falcon Jet's hourly-based payroll records, a system which, as we have explained, is not inconsistent with the Secretary's salary-basis regulations. His testimony does *not* establish as a matter of law that Falcon Jet failed to pay any Plaintiff a guaranteed salary in a predetermined amount that was not subject to impermissible reductions. Proof of that requires affirmative evidence of non-compliance, not the assumptions of a human

resource generalist explaining, in general terms, an hourly-based payroll system. Mr. Cart certainly made what appears to be a damaging admission against Falcon Jet's interest. But it is an admission that can be "overcome" by detailed evidence, at a trial or in further summary judgment proceedings on remand. Cart's testimony shows at most the possibility Falcon Jet would make impermissible reductions, which is not a basis to grant summary judgment for plaintiffs under the 2004 regulations. See Escribano v. Travis County, Tex., 947 F.3d 265, 274 (5th Cir. 2020).[7]

**C.** In concluding that the summary judgment record established, *as a matter of law*, that all eighteen Plaintiffs were not exempt employees for the entire period in question, the district court noted two examples of a Plaintiff not being paid the predetermined salary rate in a specific bi-weekly pay period: (i) Plaintiff Smith was paid for one period an amount not divisible by eight "meaning that [Falcon Jet] reduced the base pay by partial days," and (ii) Falcon Jet reduced the pay of two Plaintiffs during another pay period due to "Christmas shutdown," violating the rule that, "[i]f the employee is ready, willing and able to work, deductions may not be made for time when work is not available," 29 C.F.R. § 541.602(a)(2). On appeal, Plaintiffs note that Falcon Jet payroll records from June 1, 2014 to May 28, 2017 reflect that seven of the eighteen Plaintiffs did not receive pay equal to their bi-weekly predetermined "new rate" in every paycheck. For a number of reasons, we agree with Falcon Jet that this limited record raises issues of disputed fact and law whether the reductions established that Plaintiffs were not exempt employees.

First, the record does not conclusively establish that Falcon Jet made any *impermissible* salary reductions. For example, Plaintiff Smith received less than 80

---

[7]We further note that the Supreme Court recently rejected the oft-cited principle "that exemptions to the FLSA should be construed narrowly. . . . [T]he FLSA has over two dozen exemptions in § 213(b) alone, including the one at issue here. Those exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement." Encino Motorcars, LLC v. Navarro, 138 S. Ct. 1134, 1142 (2018).

hours of pay for numerous paychecks between September 4, 2016 and April 16, 2017. The payroll records describe his hourly shortfalls as unpaid FMLA leave, a statutorily-mandated reduction expressly authorized by 29 C.F.R. § 541.602(b)(7), a provision the district court did not even acknowledge. Plaintiffs submitted no affirmative evidence that Smith did not claim unpaid FMLA leave. Plaintiffs Smith and Kenneth Stump received reduced pay for "Christmas shutdowns" when they did not have sick or vacation leave available. The district court concluded these reductions violated the salary basis rule that "[i]f the employee is ready, willing and able to work, deductions may not be made for time when work is not available." 29 C.F.R. § 541.602(a)(2). Falcon Jet argues these reductions were permissible because the Christmas shutdowns were a full week in which neither Smith nor Stump did any work. See 29 C.F.R. § 541.602(a)(1). The district court did not address this material issue of disputed fact or the potential legal issue of how these two regulations should be read in tandem. Plaintiffs Caressa Hill and Stump were paid for fewer than 80 hours of work in pay periods explained only by "Leave of Absence." Falcon Jet argues that the leave of absence reductions were permissible reductions for full-day absences. See 29 C.F.R. § 541.602(b)(1). Again, these are disputed fact issues.

Second, even if Falcon Jet made impermissible reductions, it did not lose any exemption unless "the facts demonstrate that the employer did not intend to pay employees on a salary basis. An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis." 29 C.F.R. § 541.603(a). Plaintiffs have the burden of proof on this issue. See Yourman v. Giuliani, 229 F.3d 124, 128, 132 (2d Cir. 2000), cert. denied, 532 U.S. 923 (2001). Even under the prior, more strict "safe harbor" provision, "[i]dentifying a few random, isolated, and negligible deductions is not enough to show an actual practice or policy of treating as hourly the theoretically salaried." Kennedy v. Commonwealth Edison Co., 410 F.3d 365, 372 (7th Cir. 2005).

Third, even if Plaintiffs establish an actual practice, the exemption is lost only "during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions." 29 C.F.R. § 541.603(b). The limited summary judgment record does not begin to establish under this governing standard that every Plaintiff was not exempt during the entire period in question.

**D.** On appeal, Plaintiffs rely heavily on the Sixth Circuit's decision in Hughes v. Gulf Interstate Field Servs. Inc., 878 F.3d 183 (6th Cir. 2017), where the court reversed the grant of summary judgment in favor of the employer because the record did not establish that "the employment arrangement also include[d] a guarantee of at least the minimum weekly required amount paid on a salary basis." Id. at 189, quoting § 541.604(b). To the extent Hughes reversed the grant of summary judgment on these fact intensive issues, it is consistent with our decision. We also largely agree with the Sixth Circuit that:

> whether one looks to the phrase "includes a guarantee," 29 [C.F.R.] § 541.604(b), or to the phrase "which amount is not subject to reduction," 29 C.F.R. § 541.602(a), it is legally significant whether Hughes and McDonald's weekly salary was a matter of right or a matter of grace.

Id. at 191. However, we do not agree that the word "guarantee" in 29 C.F.R. § 541.604(b) should be construed in accordance with the definition of "guarantee" in Black's Law Dictionary. Id. at 193. In the context of a regulation that eliminated the prior reference to "employment contract," the word is better read as a shorthand statement of the governing "not subject to reduction" standard in 29 C.F.R. § 541.602(a). The overriding issue is whether exempt employees are "paid according to a pay plan under which they are, *in fact*, guaranteed to receive no less than 1/26th of their annual salary each biweekly pay period, except for deductions otherwise

-13-

expressly permitted." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on FLSA (July 9, 2003), 2003 WL 23374601, at *2 (emphasis added).

## IV. Conclusion

For the foregoing reasons, we conclude the district court erred in granting Plaintiffs summary judgment on this limited record. Accordingly, the Consent Judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

_____