PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3286
_____

STEPHANIE HIGGINS, for herself and all others similarly
situated; SHERRI KRAMER; MEGHAN TANEYHILL;
YVETTE MARSHALL; MARGARET MAGEE;
SHELLY NEAL; SHEILA LEVESQUE,
                                            Appellants

v.

BAYADA HOME HEALTH CARE INC.
_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(D.C. No. 3-16-cv-02382)
District Judge:  Honorable Jennifer P. Wilson
_____

Argued
November 9, 2022

Before:  CHAGARES, *Chief Judge*, JORDAN, and
SCIRICA, *Circuit Judges*

(Filed  March 15, 2023)
_____

Teresa M. Becvar   [ARGUED]
Haley R. Jenkins
Ryan F. Stephan
James B. Zouras
Stephan Zouras
100 North Riverside Plaza
Suite 2150
Chicago, IL 60606

David J. Cohen
604 Spruce Street
Philadelphia, PA 19106
        *Counsel for Appellants*

Thomas G. Collins   [ARGUED]
Cheri A. Sparacino
Buchanan Ingersoll & Rooney
409 N. Second Street
Suite 500
Harrisburg, PA 17101

Gretchen W. Root
Buchanan Ingersoll & Rooney
501 Grant Street
Suite 200
Pittsburgh, PA 15219
        *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

JORDAN, *Circuit Judge*.

Stephanie Higgins and her co-plaintiffs, the appellants before us now, filed a collective action and putative class action alleging that their employer, Bayada Home Care, Inc., made improper deductions from their accumulated paid time off (which, with apologies for the several acronyms we are about to use, we join the parties in calling "PTO"). The plaintiffs argue that the deductions were effectively reductions in their salary and thus made in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and state employment laws, including, as relevant to Higgins, the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.* Their primary contention is that PTO qualifies as salary under the FLSA and its related regulations, and that, by deducting from their PTO, Bayada made deductions from their salary, which is something the FLSA and regulations forbid. The District Court saw a meaningful distinction between PTO and salary and so granted partial summary judgment for Bayada. The Court then certified its decision for immediate appeal.

Whether PTO is part of an employee's salary for the purposes of the FLSA is an issue of first impression for us. We hold, based on the plain meaning of the regulatory language promulgated under the FLSA, that PTO is not part of an employee's salary. In short, we will affirm.

3

## I.  BACKGROUND[1]

Higgins is a registered nurse who formerly worked for Bayada, a company providing medical and related support services for patients in their homes.[2]  During her employment with Bayada, which lasted from September 2012 to September 2016, Higgins, like her co-plaintiffs and all full-time salaried employees,[3] was required to meet a weekly "productivity minimum."

Bayada health care employees, sometimes called "Clinicians,"[4] are paid a salary but, to meet their productivity minimums, must accumulate a specified number of "productivity points" a week – each point being roughly

---

[1] On review of the summary judgment ruling, we review the facts in the light most favorable to the nonmovants, the plaintiffs-appellants. *Andrews v. Scuilli*, 853 F.3d 690, 696 (3d Cir. 2017).

[2] Bayada is headquartered in New Jersey, employs approximately 28,000 employees, and provides home health care services to patients in 23 states.

[3] The other named plaintiffs in this case – Judith Groop, Alicia Heisey, Christine DeGrazia, Bernadette Salopek, and Harold Beardsley – all worked for Bayada at various times from 2008 to 2018.

[4] The term "Clinician," as the plaintiffs use it, includes "Registered Nurses, Physical Therapists, Occupational Therapists, Speech Language Pathologists, and Medical Social Workers."  (Opening Br. at 4 n.2.)

4

equivalent to 1.33 hours of work – which are awarded in exchange for completing work tasks. A routine visit to a patient's home, for example, is assigned one point. If an employee anticipates that she will not meet her productivity minimum, she can make up the deficit by performing office work or additional home visits. Employees can request an increase or decrease in their weekly productivity minimums, corresponding to a commensurate increase or decrease in pay.[5]

When Bayada employees exceed their productivity minimums, they receive additional compensation. On the other hand, if employees fail to meet their weekly productivity minimums, Bayada withdraws from their available PTO to supplement the difference between the points they were expected to earn and what they actually earned. Bayada does not, however, deduct from an employee's guaranteed base salary when the employee lacks sufficient PTO to cover a productivity point deficit. The only circumstance in which Bayada would reduce an employee's salary is if the employee voluntarily takes a day off without sufficient PTO.[6]

When Higgins began working for Bayada, she had a 30-point weekly productivity minimum, but, at her request, Bayada reduced her minimum to 25 points. She met her

---

[5] The amount of PTO an employee earns is likewise based on an employee's productivity minimum. Bayada employees can earn up to four weeks of PTO per year.

[6] Bayada employees without available PTO may, "on a limited basis," take days off under Bayada's "Day No Pay Payroll Procedures." (App. at 6.)

productivity minimum most weeks, sometimes exceeding it but sometimes falling short. Higgins asserts that she was under the impression that if she failed to meet her productivity minimum and lacked sufficient PTO to cover the productivity point deficit, Bayada would make a deduction from her base salary.[7] Yet she never exhausted her available PTO, and there is no evidence that Bayada ever docked her salary or that of any other plaintiff.

As already noted, the District Court granted summary judgment for Bayada on the FLSA claim. It also did so on Higgins's PMWA claim. The District Court did not, however, resolve the putative class claims brought by the six other named plaintiffs under the employment laws of the states in which they worked. Nevertheless, the plaintiffs asked the District Court to certify its summary judgment order for immediate appeal pursuant to Federal Rule of Civil Procedure 54(b) and to stay all court proceedings pending the appeal. The District Court complied, converting its partial summary judgment ruling into an appealable decision. This timely appeal followed.

---

[7] Higgins testified that she could not recall anyone advising her that Bayada would make a deduction from her base salary.

## II. DISCUSSION[8]

### A. PTO deductions do not violate the FLSA

In their appeal, the plaintiffs assert that Bayada's productivity points system is a mere proxy for compensating the total hours worked by its employees because "point values directly correlate to the amount of time Bayada expects job tasks to take[.]" (Opening Br. at 3-7.) According to the plaintiffs, that point system, together with Bayada's practice of deducting PTO from their accrued amounts of PTO, or "leave banks," if they failed to meet weekly productivity minimums, demonstrates that Bayada treats its health care employees as wage earners whose total compensation is pegged to the number of hours they work.

Without a bit of background on the FLSA and the distinction between salaried employees and wage-earners, the

---

[8] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, as the FLSA claims arise under the laws of the United States. The District Court had supplemental jurisdiction over Higgins's state law claim pursuant to 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment, "[d]rawing all reasonable inferences in favor of the party against whom judgment is sought," and affirming a grant of summary judgment "only when no issues of material fact exist and the party for whom judgment is entered is entitled to judgment as a matter of law." *Prusky v. Reliastar Life Ins. Co.*, 445 F.3d 695, 699 (3d Cir. 2006).

7

parties' dispute on this issue may be hard to understand. It comes down to money. Bayada classifies its Clinicians as salaried employees, and, as we explain further herein, the FLSA basically says that such employees do not get overtime pay. One's salary is what it is, no matter how many hours one works. *See* 29 U.S.C. § 213(a)(1) (exempting salaried employees from the FLSA's overtime pay requirement). People who earn an hourly wage, by contrast, are entitled under the FLSA to receive one-and-a-half times their regular hourly wage for every hour they work beyond a traditional forty-hour week. 29 U.S.C. § 207(a)(1). So that they can claim entitlement to time-and-a-half overtime pay, the plaintiffs want to be treated as wage-earners, and they assert that Bayada's productivity point system "is plainly inconsistent with their classification" as salaried employees exempt from the FLSA's overtime pay requirement. (Opening Br. at 5.)

In a second but related argument, the plaintiffs claim that Bayada "actively and deliberately fosters confusion about its use of PTO time to offset Clinicians' productivity shortfalls" and "intentionally leads Clinicians to believe that, if their PTO is exhausted and they earn fewer than their minimum productivity points in a workweek, they will only be paid for the productivity points they have earned that week." (Opening Br. at 10.)

Both of those arguments miss the mark, however, because the key question when determining the legal classification of an employee for FLSA purposes is not whether a pay structure approximates an hourly wage or even whether an employer threatens to dock a salaried employee's base pay; it is whether an employer made an *actual* deduction

8

from an employee's base pay.[9]  There is no evidence here that Bayada reduced the guaranteed base pay of any of the plaintiffs.

---

[9] In their Opening Brief, the plaintiffs assert that the District Court erred by not considering their "Statement of Uncontested Material Facts."  They argue that, even though the District Court decided that those facts were barred by the Middle District of Pennsylvania's Local Rule 56.1, which prohibits counterstatements of material facts, the District Court was still required to conduct a full analysis of the record to determine if granting summary judgment was appropriate.  The District Court's supposed error in not considering that document has no bearing on the outcome of this case because the document does not contain any disputed issues of material fact.  While the document states that "Plaintiffs testified that they were not paid a salary[,]" (App. at 537), and "Bayada does not pay [employees who fail to achieve their productivity minimum] a salary," (App. at 540), those conclusory allegations do not shed light on whether Bayada made a deduction from one of its employee's base salary.  Additionally, the document contains a statement from named plaintiff Alicia Heisey, who said that, during her interview for employment with Bayada, a Bayada interviewer told her that if she lacked PTO, then her salary was not guaranteed.  But, again, and as elaborated below, the material question is whether Bayada made an actual deduction from anyone's salary.

**1. The FLSA prohibits an *actual* and improper deduction from an employee's salary**

As already noted, the FLSA generally requires an employer to pay its employees a minimum of one and a half times their rate of pay for all hours worked in excess of forty hours during a week. 29 U.S.C. § 207(a)(1). There is, however, an exception to the FLSA's overtime pay requirement. It does not apply to those employees "employed in a bona fide executive, administrative, or professional capacity[.]" 29 U.S.C. § 213(a)(1). Under § 213(a)(1) of the statute (as codified), the Secretary of Labor has the authority to define the term "professional," and the Secretary has issued regulations to that end. For an employee to be considered a "professional," an employer must, among other things, show that the employee is paid on a "salary basis."[10] 29 C.F.R. § 541.600 (2021). The Department of Labor defines a salary basis pay schedule in § 541.602(a) of the regulation, as follows:

---

[10] There are two other professional status requirements, which are not at issue in this case. First, an employer must demonstrate that the employee in question earns at least $684 per week. 29 C.F.R. §§ 541.300(a)(1), 541.600. Second, an employer must demonstrate that the employee's work "[r]equir[es] knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or ... [r]equir[es] invention, imagination, originality or talent in a recognized field of artistic or creative endeavor." *Id.* § 541.300(a)(2).

An employee will be considered to be paid on a "salary basis" … if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

*Id.* § 541.602(a).

The regulation goes on to say that a salaried employee "*must receive the full salary* for any week in which the employee performs any work *without regard to the number of days or hours worked*. [Salaried] employees need not be paid for any workweek in which they perform no work." *Id.* § 541.602(a)(1) (emphasis added). And, further,

An employee is *not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business*. If the employee is ready, willing and able to work, deductions may not be made for time when work is not available.

*Id.* § 541.602(a)(2) (emphasis added).[11]

[11] Paragraph (b) of § 541.602 delineates specific exceptions to the "prohibition against deductions from pay in the salary basis requirement[,]" including that "[d]eductions from pay may be made when an exempt employee[, i.e., one

11

Supplementing § 541.602 is § 541.603, which explains that an employer may not diverge from paying its employees on a salary basis, lest the employees lose their status as workers exempt from the wage and overtime requirements of the FLSA.[12]  Thus, if an employer has an "actual practice" of

that is exempt from the overtime pay requirement, such as a salaried employee,] is absent from work for one or more full days for personal reasons, other than sickness or disability." 29 C.F.R. § 541.602(b)(1).  The regulation provides the following example:

> [I]f an employee is absent for two full days to handle personal affairs, the employee's salaried status will not be affected if deductions are made from the salary for two full-day absences. However, if an exempt employee is absent for one and a half days for personal reasons, the employer can deduct only for the one full-day absence.

*Id.*

[12] That provision provides as follows:

An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis. *An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis*. The factors to consider when determining whether an employer has an actual practice of making improper deductions include, but are not limited to: the

12

making improper deductions from an employee's salary, that employee is not paid on a salary basis and is not to be considered a professional employee exempt from the FLSA's overtime pay requirement. *Id.* § 541.603(a).

### 2. PTO does not constitute a component of an employee's salary under the FLSA

As there is no question that Bayada made deductions from the plaintiffs' PTO, the question here is whether PTO constitutes part of an employee's salary under the FLSA and its related regulations. If PTO is part of an employee's salary, then Bayada's practice of deducting PTO from its employees' leave banks when they do not meet their weekly productivity points minimums is a practice of making actual and improper deductions under the FLSA. And that would cause Bayada to forfeit the overtime-pay exemption that currently applies to its Clinicians.

---

number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions.

29 C.F.R. § 541.603(a) (emphasis added).

Neither the FLSA nor its related regulations explicitly define the term "salary." There nevertheless appears to be a clear distinction between salary and fringe benefits like PTO. The discussion of salary in § 541.602(a)(1) of the regulations requires that "an exempt employee … receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." *Id.* An employer does not violate those conditions by deducting from an employee's PTO because, when an employer docks an employee's PTO, but not her base pay, the predetermined amount that the employee receives at the end of a pay period does not change. In other words, "the employee [will continue to] regularly receive[] each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation[.]" *Id.*

That an employee might at some point be able to convert her PTO into cash does not alter that fact. The regulation requires only that the employee receive a predetermined amount of money each pay period that is "*part of* the employee's compensation[.]" *Id.* (emphasis added). So long as the employer does not dock that pre-determined part of the employee's compensation, the employer has satisfied the salary basis test.[13]

---

[13] Plaintiffs argue that the failure to meet a productivity minimum should not be understood as an absence. The reason an employer deducts PTO, however, is not material to our inquiry. As the District Court noted, an employer may deduct fringe benefits if an employee fails to meet an expectation, such as a productivity minimum, so long as the employee's salary remains the same. *See Higgins v. Bayada Home Health Care, Inc.*, 2021 WL 4306125, *11 (M.D. Pa. Sep. 22, 2021).

14

The meaning and historical usage of the terms "salary" and "fringe benefit" likewise supports reading the regulation in a way that makes the two terms mutually exclusive. Shortly after the FLSA's enactment in 1938, the Department of Labor promulgated its first regulation defining the exemption to the overtime pay requirement. 3 Fed. Reg. 2518 (Oct. 20, 1938) (to be codified at 29 C.F.R. pt. 541). The Department issued a revised regulation in 1940, which instituted the salary basis test and explicitly used the term "salary." 5 Fed. Reg. 4077-48 (Oct. 15, 1940) (to be codified at 29 C.F.R. pt. 541). The second edition of *Webster's New International Dictionary*, published less than a decade before the Department implemented the salary basis rule, defines salary as "[t]he recompense or consideration paid, or stipulated to be paid, to a person at regular intervals for services, esp. to holders of official, executive, or clerical positions; fixed compensation regularly paid, as by the year, quarter, month, or week … now often distinguished from wages." *Salary*, *Webster's New International Dictionary, Second Edition, Unabridged* (1934). Although that edition did not define "fringe benefit" – as that term seems not to have entered the lexicon until later[14] – it makes clear that salary, which is defined in contrast to wages, is "fixed compensation regularly paid[.]"

The third edition of *Webster's New International Dictionary* does contain definitions for both terms. Like its predecessor, it defines "salary" as "fixed compensation paid

---

[14] *Fringe benefit*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/fringe%20benefits (last visited Dec. 20, 2022) (listing 1948 as the year of first known use).

15

regularly (as by the year, quarter, month, or week) for services [especially for] holders of official, executive or clerical positions often – distinguished from *wage*[.]" *Salary*, *Webster's Third New International Dictionary, Unabridged* (1986). It defines fringe benefit, by contrast, as "an employment benefit (as a pension, a paid holiday, or health insurance) granted by an employer that involves a money cost without affecting basic wage rates[.]" *Fringe Benefit*, *Webster's Third New International Dictionary, Unabridged* (1986).

Other dictionaries also distinguish "salary" from "fringe benefits." Black's Law Dictionary defines "salary" as "[a]n agreed compensation for services – esp. professional or semiprofessional services – usu[ally] paid at regular intervals on a yearly basis, as distinguished from an hourly basis." *Salary*, *Black's Law Dictionary* (11th ed. 2019). By contrast, a "fringe benefit" is "[a] benefit (other than direct salary or compensation) received by an employee from an employer, such as insurance, a company car, or a tuition allowance." *Benefit*, *Black's Law Dictionary* (11th ed. 2019). *Compare also Salary*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/salary (last visited Dec. 20, 2022) ("fixed compensation paid regularly for services.") *with Fringe benefit*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/fringe%20benefits (last visited Dec. 20, 2022) ("an employment benefit (such as a pension or a paid holiday) granted by an employer that has a monetary value but does not affect basic wage rates" or "any additional benefit.").

So, whereas salary is a fixed amount of compensation that an employee regularly receives, PTO, though having a monetary value, is more appropriately defined as a fringe

benefit, which has no effect on the employee's salary or wages, and which may be irregularly paid out, such as when an employee separates from a company. The two concepts being distinct, the term "salary" as used in the FLSA is best understood as not including fringe benefits like PTO.[15]

---

[15] Because we hold that salary is distinguishable from fringe benefits like PTO, we need not consider the Department's interpretation of those regulatory terms. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) ("[A] court should not [defer to an agency's interpretation of its own regulation] unless the regulation is genuinely ambiguous. … And before concluding that a rule is genuinely ambiguous, a court must exhaust all the 'traditional tools' of construction. … To make that effort, a court must 'carefully consider[ ]' the text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on. … If genuine ambiguity remains, moreover, the agency's reading must still be 'reasonable.'" (internal citation and quotation marks omitted) (alternations in original)).

Bayada contends that courts, by "habitually defer[ing] to the Secretary's interpretations" of the regulations, have "uph[eld] the distinction between pay and leave for purposes of determining whether deductions defeat an employer's claimed overtime exemption." (Answering Br. at 41). The decisions cited by Bayada, however – apart from *Coates v. Dassault Falcon Jet Corp.*, 961 F.3d 1039 (8th Cir. 2020) – were decided prior to *Kisor*, which substantially circumscribed so-called *Auer* deference, i.e., the deference owed to an agency's interpretation of its own regulations. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997) ("Because the salary-basis test is a creature of the Secretary's own regulations, his

Because we now hold that PTO is not a part of an employee's salary under the Department of Labor's salary basis regulations, we will affirm the District Court's decision that Bayada did not make improper deductions from the plaintiffs' salaries.

---

interpretation of it is, under our jurisprudence, controlling unless 'plainly erroneous or inconsistent with the regulation.'") And while the Eighth Circuit's decision in *Coates*, the one case cited by Bayada that post-dates *Kisor*, refers to informal Department of Labor interpretative guidance, it does not rely solely on that informal guidance. 961 F.3d at 1042-48.

It bears mentioning, however, that the Department's interpretation of its regulation conforms with our own. In a 2009 opinion letter, the Department explained that the rule preventing employers from docking the pay of their salaried employees does not extend to nonmonetary compensation such as vacation time or sick leave:

> In no event can any deductions from an exempt employee's salary be made for full or partial day absences occasioned by lack of work[.] ... Employers can, however, make deductions for absences from an exempt employee's leave bank in hourly increments, so long as the employee's salary is not reduced. If exempt employees receive their full predetermined salary, deductions from a leave bank, whether in full day increments or not, do not affect their exempt status.

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on Fair Labor Standards Act (FLSA) (Jan. 16, 2009), 2009 WL 649020, at *1-2.

## B. Higgins has forfeited her PMWA claim

Higgins argues that even if her FLSA claim fails, she is entitled to relief under the PMWA because "Pennsylvania law is even more protective than the FLSA" and statutorily "define[s] wages to include all earnings of an employee, including fringe benefits, and define[s] promised vacation time as a fringe benefit." (Opening Br. at 32). We will not consider the merits of that argument, however, because Higgins forfeited it before the District Court and has done so again here on appeal.

In its opinion granting summary judgment for Bayada, the District Court did not separately consider Higgins's PMWA claim because it determined that she had not disputed Bayada's assertion that the PMWA's protections were coextensive with those of the FLSA. (App. at 15 n.11.) Higgins did reference her PMWA claim in the proceedings below, but only in a lone footnote in her brief in opposition to Bayada's motion for summary judgment. In that footnote, Higgins asserted that Pennsylvania law provides broader protection than the FLSA because it defines wages to include fringe benefits. The footnote also cited a 1985 Superior Court of Pennsylvania case, *Ressler v. Jones Motor Co.*, 487 A.2d 424, 425 (Pa. Super. Ct. 1985), in support of the proposition that an employer must compensate a recently separated employee for earned but unused PTO. Regardless, the District Court was not required to consider Higgins's Pennsylvania law claim because "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered [forfeited]." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997).

Likewise, on appeal, Higgins makes only a passing reference to the PMWA in her opening brief and mentions it only once in her reply brief. "A passing reference to an issue ... will not suffice to bring that issue before this court." *Laborers' Int'l Union of N. Am. v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) (omission in original) (quotation marks omitted)). Because Higgins failed to develop her PMWA argument below and has made only passing reference to it on appeal, we deem that argument forfeited.

## III. Conclusion

For the foregoing reasons, we will affirm the District Court's partial summary judgment order.