**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1115

_____

LYNNANN VOORHEES, an individual,

Appellant

v.

INDU TOLIA, an individual; VIRTUALITY LLC, A New Jersey
Corporation; CARE LLC, A New Jersey Corporation; ADAM NEWMAN,
an individual; AUGTHAT LLC, a New Jersey Corporation

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-16-cv-08208)
District Judge: Honorable Zahid N. Quraishi

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 19, 2023
Before: JORDAN, CHUNG, and NYGAARD, <u>Circuit Judges</u>

(Opinion filed: July 20, 2023)

_____

OPINION[*]

_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Lynnann Voorhees appeals the dismissal of two of her claims and the entry of summary judgment on a third. We will affirm.

I.

The parties are familiar with the background of this case, and we recite only enough of it to explain our decision. Voorhees formed Pear Enterprises, Inc., to develop and market products that she refers to as Augmented Reality for Education. Those products appear to consist of educational software programs, worksheets and applications to be used with wearable technology.

Voorhees alleges that, with an eye toward future ventures, she shared information about these products with Indu Tolia and Adam Newman. Voorhees shared it with Tolia pursuant to a Non-Disclosure Agreement ("NDA"), but Newman refused to sign one. Voorhees, Tolia, and Newman then formed Virtuality LLC to develop and market these products. But according to Voorhees, Tolia and Newman forced her out of Virtuality by defrauding her into signing a Stock Surrender Agreement and Employment Agreement by which she surrendered her ownership interest and became an employee instead. Virtuality ultimately proved unsuccessful, and Tolia and Newman formed similar companies of their own (Tolia's CARE LLC and Newman's Augthat LLC).

Voorhees later filed this suit pro se against Tolia, Newman, Virtuality, CARE and AugThat. The District Court dismissed her complaint on the basis of certain contractual provisions, but we vacated and remanded. See Voorhees v. Tolia, 761 F. App'x 88 (3d

2

Cir. 2019). Voorhees then filed an amended complaint asserting ten claims under New Jersey law. Tolia and CARE[1] moved to dismiss it under Fed. R. Civ. P. 12(b)(6). The District Court granted their motion in part and dismissed five of Voorhees's claims against Tolia, including those for misappropriation of trade secrets and fraud. After discovery, Tolia moved for summary judgment on Voorhees's remaining claims, including for breach of contract. The court granted that motion and later dismissed Voorhees's claims against the remaining defendants. Voorhees appeals. The District Court had diversity jurisdiction under 28 U.S.C. § 1332,[2] and we have jurisdiction under 28 U.S.C. § 1291.

## II.

Voorhees raises three issues on appeal, but each lacks merit. First, Voorhees challenges the Rule 12(b)(6) dismissal[3] of her claim against Tolia under the New Jersey Trade Secrets Act ("NJTSA"), N.J. Stat. Ann. §§ 56:15-1 to 56:15-9 (Count One). The District Court dismissed this claim because Voorhees did not allege the existence of a trade secret as defined in N.J. Stat. Ann. § 56:15-2. We agree.

---

[1] Tolia and CARE (collectively, "Tolia") were the only defendants who responded to the complaint.

[2] We previously directed the District Court to address its jurisdiction because Voorhees's allegations of diversity were deficient. See Voorhees, 761 F. App'x at 91. Voorhees thereafter amended her complaint to include proper allegations of diversity as the District Court explained in its Rule 12(b)(6) opinion. (ECF No. 47 at 6-8.)

[3] We review such dismissals de novo. See Oakwood Labs. LLC v. Thanoo, 999 F.3d 892, 903 n.9 (3d Cir. 2021). We will affirm if the plaintiff's factual and non-conclusory allegations, accepted as true, fail to allege a plausible entitlement to relief. See id. at 904.

The NJTSA defines a trade secret as information that, inter alia, "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." N.J. Stat. Ann. § 56:15-2. To plead the existence of a trade secret, Voorhees had to "sufficiently identify the information [she] claims as a trade secret and allege facts supporting the assertion that the information is indeed protectible as such." Oakwood Labs., 999 F.3d at 905.[4] Although "a plaintiff need not spell out the details of the trade secret to avoid dismissal[,] . . . the subject matter of the trade secret must be described with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade[.]" Id. at 906 (quotation marks omitted). "[G]eneric allegations and general references to products or information are insufficient[.]" Mallet & Co. v. Lacayo, 16 F.4th 364, 384 n.24 (3d Cir. 2021) (quotation marks omitted).

Here, Voorhees's allegations of her trade secrets are wholly generic. In her amended complaint, she alleged generally that she and Pear Enterprises[5] developed and

---

[4] We framed our discussion in Oakwood Laboratories in terms of the plaintiff's claim under the Defend Trade Secrets Act ("DTSA"), but we noted that "our analysis of the DTSA also applies to [the plaintiff's] claims under the NJTSA." Oakwood Labs, 999 F.3d at 905 n.11.

[5] Voorhees alleges that she formed Pear Enterprises (which appears to be partially owned by a non-party) to develop and market these ideas. That circumstance raises the question whether these alleged trade secrets belong to Pear Enterprises or to Voorhees individually. The potential relevance of that distinction is that Voorhees asserted claims only on her own behalf and, as a non-lawyer proceeding pro se, likely could not have done so on behalf of Pear Enterprises. See Murray ex rel. Purnell v. City of Phila., 901 F.3d 169, 171 (3d Cir. 2018). But we need not address that issue because Voorhees has

4

owned "Augmented Reality for Education (AR4ED) software services" (ECF No. 39 at 3 ¶ 14), "AR worksheets and lessons" (Id. at 4 ¶ 22), "information related to the concepts, ideas and products for . . . AR4ED" (id. at 5 ¶ 24), a "wearable display and App" (id. at 5 ¶ 25), "AR4ED worksheets and programs" (id. at 6 ¶ 31), "AR4ED worksheets and . . . Pear Imaginality Play and Create program" (id. at 7 ¶ 32), "ARworksheets and Imaginality Labs" (id. at 7 ¶ 33), "concepts, designs and future development strategies" (id. at 11 ¶ 52), "the Pear Imaginality product" (id. at 12 ¶ 57), the "PEAR Imaginality platform" (id. at 12 ¶ 59), and "worksheets, animations and/or work product" (id. at 15 ¶ 71). In Voorhees's brief in opposition to dismissal, she described her alleged trade secrets in similarly generic terms.[6] And in her brief on appeal, she refers only to her "augmented reality software." (Appellant's Br. at 15.) Even considering Voorhees's assertions in her briefs together with the allegations in her amended complaint, she has not provided enough detail about this information (such as the technology underlying it or whether or how she developed that technology) to "separate it from matters of general

_____

not adequately alleged the existence of a trade secret in the first place.

[6] In that brief, Voorhees asserted that her trade secrets consisted of:

> AR4ED Worksheets with curriculum, AR4ED Posters, AR4Reality(Real Estate ads), AR Yearbook, ART-Shirts, ARCARDS,(Greeting Cards, Flash Cards, that come to life) AR for Marketing, AR for Enterprise and Training (Pharmaceutical), AR for Wearable displays to help those with vision issues (SightAR), AR4ET (Exposure Therapy) AR4ART (FiFi Face Painting App.) Tiger Face App, AR Puzzle, ARBooks, and the Pear Imaginality Play and Create Software (Partner Mindspace Solutions).

(ECF No. 44 at 10) (formatting in original).

knowledge in the trade or of special knowledge of those persons who are skilled in the trade[.]" Oakwood Labs., 999 F.3d at 906. Thus, we agree with the District Court that Voorhees did not state a claim under the NJTSA.[7]

Second, Voorhees challenges the Rule 12(b)(6) dismissal of her fraud claim against Tolia (Count Three). To plead fraud under New Jersey law, a plaintiff must allege, inter alia, that the defendant made a misrepresentation intending to induce reliance and that the plaintiff reasonably relied on it. See Allstate N.J. Ins. Co. v. Lajara, 117 A.3d 1221, 1231 (N.J. 2015). Here, Voorhees argues that Tolia told her there were potential investors in Virtuality when in fact there were none. Voorhees further argues that Tolia's representations induced her to make a $12,000 investment in Virtuality in January 2014 and later to surrender her shares in the Stock Surrender Agreement

---

[7] The District Court applied a six-factor test that New Jersey courts derived from comment b to Section 757 of the Restatement (First) of Torts. See, e.g., Hammock ex rel. Hammock v. Hoffman-LaRoche, Inc., 662 A.2d 546, 560 (N.J. 1995). Voorhees argues that this test has been superseded by the NJTSA. She further argues that, since New Jersey's enactment of the NJTSA, "no New Jersey court has used the six-factor test." (Appellant's Br. at 16.) That is not accurate. See Steris Corp. v. Shannon, No. A-4847-17T3, 2019 WL 2420048, at *3-5 (N.J. Super. Ct. App. Div. June 10, 2019) (not precedential) (applying the six-factor test to a claim under the NJTSA); cf. Lasch v. Koperweis, No. A-4352-17T1, 2019 WL 2317166, at *3-4 (N.J. Super. Ct. App. Div. May 31, 2019) (not precedential) (distinguishing between claims under the NJTSA and New Jersey common law and applying Hammock only to the latter). It does appear true that there is no New Jersey precedent addressing whether or to what extent the six-factor test remains relevant in assessing claims under the NJTSA. Cf. N.J. Stat. Ann. § 56:15-1 Editors' Notes (noting legislative statement that the NJTSA was based on the Uniform Trade Secrets Act with modifications "to reflect this State's common law trade secrets jurisprudence"). But we need not decide this issue because Voorhees's complaint does not allege a trade secret as defined in the NJTSA itself.

6

executed February 1, 2014. The District Court dismissed this claim on the ground that Voorhees alleged only that <u>Newman</u>, not Tolia, made misrepresentations about investors.

Once again, we agree. Voorhees's only non-conclusory allegation that Tolia herself made any statements about investors is her allegation that, on April 12, 2014, Tolia said that investors were not interested in meeting with Voorhees. (ECF No. 39 at 12 ¶ 55.) But by then, Voorhees already had made the $12,000 investment and entered into the Stock Surrender Agreement that she claims the defendants' misrepresentations induced. (<u>Id.</u> at 9-10 ¶¶ 39, 45.) Voorhees does not allege that she took any action in reliance on Tolia's alleged statement after Tolia made that statement. Moreover, Voorhees has failed to allege a theory which would support Tolia's liability for Newman's statements. While Voorhees did assert a separate claim for civil conspiracy, the District Court dismissed it under Rule 12(b)(6) because Voorhees did not allege any actual agreement between Tolia and Newman. Voorhees does not challenge the dismissal of that claim on appeal. Even if her fraud-related arguments could be construed as such a challenge, we would reject it for the reasons stated by the District Court.

Third, Voorhees challenges the entry of summary judgment[8] for Tolia on her claim for breach of contract (Count Two). Voorhees claims that Tolia breached the parties' NDA[9] by using "confidential information" as defined therein for Tolia's own

---

[8] "Our review of a grant of summary judgment is plenary. Summary judgment is appropriate when . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." <u>Nitkin v. Main Line Health</u>, 67 F.4th 565, 570 n.2 (3d Cir. 2023) (internal citation and quotation marks omitted).

[9] The NDA contains a forum-selection clause designating Pennsylvania as the forum for

business CARE. The District Court entered judgment for Tolia because Voorhees did not present evidence that Tolia used any specific information for her own business in violation of the NDA. We agree with that ruling as well.

"To withstand a motion for summary judgment . . ., a plaintiff must point to concrete evidence in the record that supports each and every essential element of [her] case. Although we view all facts in the light most favorable to a plaintiff opposing summary judgment and draw all reasonable inference in that party's favor, a plaintiff who reaches the summary judgment stage may no longer rest upon the mere allegations . . . of [her] pleadings. Nor will bare assertions, conclusory allegations, or suspicions suffice. Instead, the plaintiff must set forth specific facts"—supported by "concrete evidence"— that "establish[] a triable issue." Nitkin, 67 F.4th at 571 (alterations, internal citations, and quotation marks omitted).

Here, Voorhees relies primarily on the allegations of her amended complaint and on conclusory assertions in her summary judgment brief.[10] The only potential exception

claims thereunder. The District Court declined to enforce that clause, but Tolia asks us to do so on the ground that it deprived the court of subject-matter jurisdiction. It did not. See Foster v. Chesapeake Ins. Co., 933 F.2d 1207, 1212 n.7 (3d Cir. 1991). We otherwise decline to address Tolia's arguments based on the forum-selection clause because enforcement of that clause would alter the nature of the District Court's ruling and Tolia did not file a cross-appeal as required to urge that result. See EF Operating Corp. v. Am. Bldgs., 993 F.2d 1046, 1048-49 (3d Cir. 1993) (holding that a cross-appeal was required for defendants to argue lack of personal jurisdiction where the District Court entered summary judgment for them on the merits). Tolia does raise some alternative arguments on this claim that do not require a cross-appeal, but we need not reach them.

[10] For example, Voorhees asserts in sweeping fashion that she was "the source of all the Defendants based their company's products and services on" and of the intellectual property that defendants "used to launch their products and companies." (Appellant's Br.

8

is Voorhees's reliance on a patent application that Tolia submitted in 2014 (which was rejected for lack of novelty). Voorhees argues that Tolia included some of her "confidential information" in this patent application. But the District Court declined to consider the patent application because Voorhees did not mention or plead any claim based on it in her amended complaint.[11] Voorhees has not challenged or even acknowledged that ruling on appeal. In any event, Voorhees has failed to connect the patent application, and any of Voorhees's confidential information that might be contained therein, to Tolia's founding and operation of CARE

Finally, Voorhees claims that Tolia also breached a separate oral contract to pay her $2,000 per month for living expenses while working with Virtuality. Voorhees raised this claim in her briefing on defendants' motion for summary judgment, but the District Court declined to consider it because she did not raise it in her amended complaint. Voorhees does not challenge that ruling except to assert without elaboration that the District Court "failed" to consider this claim. (Appellant's Br. at 23.) That "passing reference" does not raise this issue for review. Higgins v. Bayada Home Health Care

---

at 21-22) (quoting ECF No. 96 at 16, 18.) These assertions do not specify what Tolia used or how. See Nitkin, 67 F.4th at 570 (rejecting a plaintiff's argument that the District Court should have considered "nonspecific instances of misconduct").

[11] The court addressed this issue in discussing Voorhees's claims for conversion and trespass, which she does not raise on appeal but which were based on the same allegations. The court did not specifically discuss this point in addressing Voorhees's claim for breach of the NDA, perhaps because she did not mention the patent application in the section of her brief arguing how Tolia had breached the NDA. In any event, the court's explanation for not considering the patent application applies also to this claim.

Inc., 62 F.4th 755, 763 (3d Cir. 2023).  Even if it did, we agree that Voorhees did not raise this claim in her amended complaint.[12]

III.

For these reasons, we will affirm the orders of the District Court.

---

[12] In her amended complaint, Voorhees alleged that "defendant TOLIA stated . . . that she would take care of Plaintiff VOORHEES salary and expenses and for Plaintiff VOORHEES to let her know the amount of money Plaintiff VOORHEES needed each month, which Plaintiff VOORHEES determined to be $2,000.00."  (ECF No. 39 at 8 ¶ 36.)  But Voorhees did not allege that Tolia actually agreed to pay her $2,000 per month, and she did not include this claim in Count Three or otherwise plead the elements of breach of contract on this claim.  Nor does she argue—as to this claim or any other—that the District Court should have allowed her to further amend her complaint.